EWALD v EWALD

Docket No. 295161. Submitted March 3, 2011, at Detroit. Decided May
   26, 2011, at 9:10 a.m.
      Plaintiff, Stephen Ewald, and defendant, Kristin Ewald, were
   granted a divorce in November 2009 in the Tuscola Circuit Court,
   W. Wallace Kent, Jr., J. The court had issued an initial opinion in
   July 2009 that divided the marital property and awarded the
   parties joint legal custody of their two minor children. Their son
   was to live primarily with plaintiff and their daughter was to live
   primarily with defendant. Plaintiff was awarded parenting time
   with his daughter and, because the son had become alienated from
   defendant during the course of the proceedings, defendant's
   parenting time with her son was held in abeyance until (1) the
   parties agreed otherwise, (2) the son's mental health counselor
   recommended parenting time, or (3) further order of the court.
   The opinion required plaintiff to pay child support and some of
   defendant's attorney fees and included a provision giving plaintiff
   the right to purchase from defendant the marital farmland that
   she was awarded for its net value within three months of the entry
   of the judgment. Plaintiff moved for clarification and reconsidera-
   tion of certain provisions, and the court issued a supplemental
   decision in September 2009. The court recalculated the child
   support as if the son was spending significant overnight time with
   defendant. The court's deviation from the amount determined by
   application of the Michigan Child Support Formula (MCSF), MCL
   552.605(2), had the net effect of reducing defendant's obligation
   and increasing plaintiff's obligation. The court entered the divorce
   judgment in November 2009 that reiterated its rulings from the
   July 2009 opinion regarding the division of marital property. It
   included temporary spousal support for defendant through the
   date of the transfer of the farmland to her and stated that
   defendant was responsible for the medical expenses she incurred
   during the pendency of the action for elective, uninsured surgery.
   Plaintiff was also ordered to pay an additional $2,500 of defen-
   dant's attorney fees. The parenting-time order was the same as in
   the July 2009 opinion. The child support ordered was the same
   amount as provided in the September 2009 supplemental decision
   when two children are covered by the order but was

increased from the amount provided in the supplemental decision when only one child is covered by the order. Plaintiff appealed with regard to the child support order. Defendant cross-appealed, contending that the award of temporary spousal support was inequitable, the award of attorney fees was inadequate, and the court erred by not ordering plaintiff to pay for her medical expenses incurred for her elective, uninsured surgery.

The Court of Appeals *held*:

1. Trial courts must presumptively follow the MCSF when determining parents' child support obligations. The criteria for deviating from the MCSF, MCL 552.605(2), are mandatory. The Legislature has required trial courts to meticulously set forth the statutory factors when deviating. Anything less fails to fulfill the statutory procedure. The trial court's compliance was not meticulous in this case.

2. The trial court erred as a matter of law by deviating from the MCSF in order to punish plaintiff rather than determining each parent's fair share of child support in light of their combined net income available for child support. The MCSF provides that, except as otherwise permitted by MCL 552.605, courts must order child support in the amount determined by applying the MCSF. Unless rebutted by facts in a specific case, the law presumes that the MCSF sets appropriate levels of support. The factors listed in the MCSF that may justify a deviation do not include the violating or obstructing of a parenting-time order. There is no indication in the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*, that abatement of child support is an appropriate or available method of enforcing court-ordered parenting time. The act does not contemplate the suspension of child support as a remedy when the custodial parent has frustrated visitation.

3. The parenting-time offset at issue in this case was required by the MCSF to be calculated on the basis of the actual overnights the son will likely spend with his mother. The record shows that the parties acceded to their son's desire not to visit his mother and the trial court adopted that agreement. There is no evidence to support the trial court's determination that the son's estrangement from his mother was plaintiff's fault. The trial court erred by deviating from the MCSF on the basis of the clearly erroneous finding of fact that plaintiff was at fault for the son's estrangement from defendant. Plaintiff's alleged complicity in alienating the parties' son from his mother is not a circumstance that renders the MCSF unjust or inappropriate so as to allow deviation from the MCSF under MCL 552.605(2). The child support provisions of the judgment of divorce are vacated and the case is remanded for

reconsideration without deviation from the MCSF in light of the parties' income and potential income as affected by the marital-property division.

4. The award of temporary spousal support pending the distribution of the marital property was not inequitable. The trial court did not abuse its discretion by awarding only temporary spousal support.

5. Defendant failed to present evidence in the trial court to establish the amount and reasonableness of the attorney fees she claimed. The matter is remanded for defendant to provide evidence necessary to meet her burden of proof with respect to her financial need and plaintiff's ability to pay attorney fees as well as the amount of fees claimed and their reasonableness.

6. The trial court did not abuse its discretion by ruling that defendant's uninsured, voluntary medical expenses were her own responsibility.

Affirmed in part, vacated in part, and remanded.

1. CHILD SUPPORT — MICHIGAN CHILD SUPPORT FORMULA — DEVIATIONS.

Trial courts must presumptively follow the Michigan Child Support Formula when determining the child support obligations of parents; a court may deviate from the formula only if it determines from the facts of the case that application of the formula would be unjust or inappropriate and sets forth in writing or on the record: (1) the child support amount determined by application of the formula, (2) how the child support order deviates from the formula, (3) the value of property or other support awarded instead of the payment of child support, if applicable, and (4) the reasons why application of the formula would be unjust or inappropriate in the case; the trial court must meticulously set forth the four factors, anything less fails to fulfill the statutory procedures (MCL 552.605[2]).

2. CHILD SUPPORT — MICHIGAN CHILD SUPPORT FORMULA — SUPPORT AND PARENTING TIME ENFORCEMENT ACT — INTERFERENCE WITH PARENTING TIME.

The Support and Parenting Time Enforcement Act does not provide for the enforcement of parenting-time rights by adjusting child support obligations; a parent's alleged interference with the parenting-time rights of the other parent is not a circumstance that would render it unjust or inappropriate under MCL 552.605(2) to apply the parental-time offset contained in the Michigan Child Support Formula so as to permit deviation from the formula (MCL 552.601 *et seq.*; 2008 MCSF 3.03).

3. CHILD SUPPORT — MICHIGAN CHILD SUPPORT FORMULA — PARENTS' INCOME — IMPUTED INCOME.

   The Michigan Child Support Formula provides that to the extent that a parent's assets could be, but are not, used to generate regular income, the parent's income includes an imputed reasonable and regular investment return on the assets (2008 MCSF 2.06[A]).

*Skinner Professional Law Corporation* (by *David R. Skinner* and *Staci M. Richards*) for plaintiff.

*Stephens & Moore* (by *Phoebe J. Moore*) for defendant.

Before: SAWYER, P.J., and MARKEY and FORT HOOD, JJ.

MARKEY, J. In this divorce action, plaintiff appeals by right the trial court's child support order. We conclude that the trial court erred as a matter of law by deviating from the Michigan Child Support Formula (MCSF), MCL 552.605(2). For the reasons stated in this opinion, we vacate the order for child support in the judgment of divorce and remand for reconsideration without deviation from the MCSF in light of the parties' income as affected by the marital-property division. Defendant cross-appeals, contending that the trial court's award of temporary spousal support was inequitable, that the trial court's award of attorney fees was inadequate, and that the trial court erred by not ordering plaintiff to pay for uninsured medical expenses defendant incurred during the pendency of this action. We affirm these dispositional rulings by the trial court.

### I. FACTS AND PROCEEDINGS

The parties were married in December 1993 when they were both in their twenties. The marriage produced two children: a son was born in July 1995, and a

daughter was born in April 1997. Plaintiff filed for divorce on February 14, 2008, and the judgment of divorce was not entered until November 4, 2009. The parties separated before the complaint for divorce was filed when they purchased a separate residence for defendant a short distance from the marital home. The parties' son resided with his father and the daughter lived with her mother. Although initially each child visited regularly with the other parent, the son soon had a falling-out with his mother and no longer visited. Defendant never sought a court order to enforce parenting-time rights, but she sought counseling to resolve relationship issues between them.

Both parties' formal education ended with their graduation from high school. After they were married, plaintiff formed a farm corporation with his parents (Ewald Farms). Plaintiff held a 14 percent interest in the farm corporation and served as its president. Although defendant was a stay-at-home mother, she also worked on the family farming business in the fields and doing bookkeeping and other paperwork. Throughout the marriage, plaintiff farmed and managed the farm corporation. After the parties separated, plaintiff continued farming, and defendant was able to find short-term employment through an employment agency.

During the marriage, the parties' received rental income from Ewald Farms on 365 acres of farmland the parties were able to acquire. Plaintiff also received a small salary from the family farming operation, and many of the family's living expenses were paid by the farm corporation. After trial, the court issued a written opinion on July 23, 2009, addressing disputed issues. The trial court determined that the net value of the marital farmland was $808,106, and that plaintiff's 14 percent interest in Ewald Farms was worth $181,185.

The parties' other assets included the two residences and assorted personal property. The parties do not dispute the valuation of the marital property or its division.

In its July 2009 opinion, the trial court noted that to the extent that its rulings favored defendant, it did so because it found that plaintiff was more at fault than defendant for the breakdown of the marriage relationship. The trial court divided the marital property by awarding plaintiff his interest in Ewald farms and awarding defendant 259 of the parties' 365 acres or 64 percent of the marital farmland. The court gave plaintiff the right to purchase defendant's land from her by paying defendant its net worth of $518,000 within three months of the entry of the judgment.[1]

The court also ruled that the established custodial environment would continue and awarded the parties joint legal custody of the two children: The son would live primarily with his father, and the daughter would live primarily with her mother. Addressing parenting time, the court observed that the parties' son "has been alienated from his mother in the course of these proceedings and has been very defiant about visiting with her." Consequently, the trial court continued the terms of a stipulated order regarding custody and parenting time entered April 3, 2009. That order provided plaintiff parenting time with his daughter, but defendant's parenting time with her son was "held in abeyance until the [son's] counselor recommends parenting time, or until the parties agree otherwise, or until further order of the Court."

Regarding child support, in its July 2009 opinion the court imputed a minimum-wage, annual gross income

---

[1] Plaintiff was awarded a five-year right of first refusal if he did not meet the purchase deadline and defendant sought to sell the property.

of $15,600 to defendant. The court determined that plaintiff had an annual gross income of $73,970, consisting of a $24,700 farming salary, $36,202 land rentals, and approximately $13,000 in personal expenses paid by the farm corporation. The trial court opined that using this income data the MCSF would require plaintiff to pay defendant, including ordinary medical expenses, $618 a month when two children are being supported and $383 a month for one child. The court recognized that its martial-property division "deprives [plaintiff] of much of the property that he had been farming" and that the income of each of the parties would change significantly. Therefore, the court stated "either party may petition for a support review at that time."

Plaintiff moved for clarification and reconsideration regarding the farmland buyback. Plaintiff further sought reconsideration of child support on the basis that he would incur debt to exercise the farmland buyback while defendant would receive $518,000 capable of being invested to produce income. Plaintiff also requested recalculation of child support because defendant did not exercise parenting time with the parties' son. In response, the trial court issued a supplemental decision on September 24, 2009, in which it ruled that child support would be calculated as if the parities' son spent significant overnight time with defendant. The trial court's deviation from the MCSF had the net effect of reducing defendant's obligation and increasing plaintiff's child support obligation. The court ruled that plaintiff was at fault for the estrangement between the mother and son and that plaintiff "should not be permitted to profit from the acts and behavior in which he engaged which alienated [the son] from his mother." The court also observed that, in light of its other rulings, plaintiff was financially able to pay the amount

of support ordered and that defendant needed that
support. The trial court concluded, "[a]s a matter of
equity, taking all matters into consideration, and con-
sidering the record as a whole, which record supports
the finding that [plaintiff] acted wrongfully in alienat-
ing [the son] from his mother, the Court deviates from
the formula guidelines . . . ." The court then stated:

> While there are two minor children, support shall be
> paid as if each parent had 103 days parenting time with the
> child in the custody of the other parent, even recognizing
> that such is not in [fact] the [case]. Therefore, the support
> while there are two children shall be in the amount of
> $571.00 per month child support and ordinary medical in
> the amount of $47.00 per month payable by Mr. Ewald to
> Mrs. Ewald. When there is one child remaining, Mr. Ewald
> shall pay child support in the amount of $618.00 per month
> child support and ordinary medical in the amount of $23.00
> per month. . . . Thus, until [the son] emancipates, the
> Court orders an amount equal to that which Mr. Ewald
> would be required to pay if [the son] visited his mother
> regularly. When [the son] emancipates, Mr. Ewald will no
> longer be legally obligated for [the son's] child support, and
> thereafter the ordinary guidelines will be followed.

The trial court's supplemental decision referred to an
attached "guideline calculations" that provided that the
child support amounts were calculated on the premise
that each parent had on average 182.5 overnights. The
"guideline calculations" provide that plaintiff pay the
same amount of support for two minor children as the
court ordered in its supplemental decision, but for only
one child, they require plaintiff to pay $867 each month,
plus $23 for ordinary medical expenses.

The judgment of divorce was entered November 4,
2009. It reiterated the trial court's rulings from its July
2009 opinion regarding the division of marital property,
the terms on which plaintiff could purchase defendant's

share of the farmland, and temporary spousal support through the date of the transfer of the farmland to defendant. The judgment also included the court's ruling that defendant was responsible for medical expenses she incurred for elective, uninsured surgery but awarded her an additional $2,500 in attorney fees over what plaintiff had already paid. The judgment provided that defendant's parenting time with the parties' son be "held in abeyance until such time as (1) the parties agree otherwise, (2) [the son's] mental health counselor/therapist recommends parenting time, or (3) further Order of this Court."

A uniform child support order attached to the judgment provides that plaintiff pay defendant when two children are covered by the order, $571 plus $47 ordinary medical ($618/month), and when only one child is covered by the order, $867 plus $23 ordinary medical ($890/month). The support effective date was July 23, 2009.

## II. CHILD SUPPORT

### A. STANDARD OF REVIEW

A trial court must presumptively follow the MCSF when determining the child support obligation of parents. MCL 552.605; *Burba v Burba (After Remand)*, 461 Mich 637, 645; 610 NW2d 873 (2000); *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). This Court reviews de novo as a question of law whether the trial court has properly applied the MCSF. *Burba*, 461 Mich at 647; *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006). The trial court's factual findings underlying its determination regarding child support are reviewed for clear error. MCR 2.613(C); *Stallworth*, 275 Mich App at 284. The trial

court's discretionary rulings permitted by statute and the MCSF are reviewed for an abuse of that discretion. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). An abuse of discretion occurs when a court selects an outcome that is outside the range of reasonable and principled outcomes. *Stallworth*, 275 Mich App at 284. A trial court abuses its discretion when it relies on a legally improper reason for departing from the MCSF in establishing a parent's child support obligation. *Burba*, 461 Mich at 649.

### B. ANALYSIS

This case presents an issue of first impression: whether a parent's actions that cause a child to refuse to visit the other parent would render it "unjust or inappropriate" under MCL 552.605(2) to apply the "parental time offset" of 2008 MCSF 3.03, so as to permit deviation from the MCSF. We conclude that the answer is no because the Support and Parenting Time Enforcement Act (the act), MCL 552.601 *et seq.*, read as a whole, does not provide for enforcement of parenting-time rights by adjusting child support obligations. Consequently, a parent's alleged interference with the parenting-time rights of the other parent is not a circumstance that would permit deviation from the MCSF under MCL 552.605(2).

Trial courts must presumptively follow the MCSF when determining parents' child support obligations. *Burba*, 461 Mich at 645; *Stallworth*, 275 Mich App at 284. The Legislature provides criteria for deviation in § 5 of the act, MCL 552.605(2):

> Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an

order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:

(a) The child support amount determined by application of the child support formula.

(b) How the child support order deviates from the child support formula.

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

The criteria for deviating from the MCSF are mandatory. *Burba*, 461 Mich at 644. "The trial court, when it deviates from the formula, must first state the level of child support it would have ordered had it followed the formula . . . ." *Id*. at 645; MCL 552.605(2)(a). Defendant contends that the trial court complied with this criterion by its statement regarding child support in its July 2009 opinion. If true, the trial court's compliance was not meticulous. The Legislature has required trial courts "to meticulously set forth [the statutory] factors when deviating. Anything less fails to fulfill the statutory procedure." *Burba*, 461 Mich at 646.

The trial court also erred as a matter of law by deviating from the MCSF in order to punish plaintiff rather than determining each parent's fair share of child support in light of their combined net income available for child support. 2008 MCSF 3.01(B). "Except as otherwise permitted by MCL 552.605, courts must order child support in the amount determined by applying this formula. Unless rebutted by facts in a specific case, the law presumes that this formula (or 'guideline') sets appropriate levels of support." 2008 MCSF 1.01(B).

Guidance for deviations is found in 2008 MCSF 1.04(D) and 1.04(E):

1.04(D) In exercising its discretion to deviate, the court may consider any factor that it determines is relevant.

1.04(E) Deviation Factors

Strict application of the formula may produce an unjust or inappropriate result in a case when any of the following situations occur:

(1) The child has special needs.

(2) The child has extraordinary educational expenses.

(3) A parent is a minor.

(4) The child's residence income is below the threshold to qualify for public assistance, and at least one parent has sufficient income to pay additional support that will raise the child's standard of living above the public assistance threshold.

(5) A parent has a reduction in the income available to support a child due to extraordinary levels of jointly accumulated debt.

(6) The court awards property in lieu of support for the benefit of the child (§4.03).

(7) A parent is incarcerated with minimal or no income or assets.

(8) A parent has incurred, or is likely to incur, extraordinary medical expenses for either that parent or a dependent.

(9) A parent earns an income of a magnitude not fully taken into consideration by the formula.

(10) A parent receives bonus income in varying amounts or at irregular intervals.

(11) Someone other than the parent can supply reasonable and appropriate health care coverage.

(12) A parent provides substantially all the support for a stepchild, and the stepchild's parents earn no income and are unable to earn income.

(13) A child earns an extraordinary income.

(14) The court orders a parent to pay taxes, mortgage installments, home insurance premiums, telephone or utility bills, etc. before entry of a final judgment or order.

(15) A parent must pay significant amounts of restitution, fines, fees, or costs associated with that parent's conviction or incarceration for a crime other than those related to failing to support children, or a crime against a child in the current case or that child's sibling, other parent, or custodian.

(16) A parent makes payments to a bankruptcy plan or has debt discharged, when either significantly impacts the monies that parent has available to pay support.

(17) A parent provides a substantial amount of a child's day-time care and directly contributes toward a significantly greater share of the child's costs than those reflected by the overnights used to calculate the offset for parental time.

(18) Any other factor the court deems relevant to the best interests of a child.

Although 2008 MCSF 1.04(D) provides that "the court may consider any factor that it determines is relevant" when exercising its discretion to deviate, and 2008 MCSF 1.04(E)(18) provides for a catch-all "best interests" of the child factor, notably absent from the list of possible factors justifying deviation is any mention of the violating or obstructing of a parenting-time order. Likewise, there is no mention in the act that abatement of child support is an appropriate or available method of enforcing court-ordered parenting time. Rather, a parent who has been denied parenting time may obtain "makeup parenting time," MCL 552.642, or a parent violating a parenting-time order may be found in contempt of court. A court may then impose various sanctions, including fines, jail, or probationary terms and conditions. MCL 552.644(2). As this Court observed

in *Rzadkowolski v Pefley*, 237 Mich App 405, 409; 603 NW2d 646 (1999), the act[2] "does not contemplate the suspension of child support as a remedy when the custodial parent has frustrated visitation." The *Rzadkowolski* Court applied a strict separation between parenting-time rights (visitation) and the parent's obligation of support. The Court held:

> Defendant had a duty to support his child. MCL 722.3; MSA 25.244(3). That duty was not abrogated by the fact that [the] plaintiff left the state without permission of the court. To the contrary, [the] defendant's remedy was to seek enforcement of his visitation rights, not to withhold his child support payments. [*Rzadkowolski*, 237 Mich App at 409.]

The parenting-time offset at issue in this case is based on the premise that as "a parent cares for a child overnight, that parent should cover many of the child's unduplicated costs, while the other parent will not have to spend as much money for food, utility, and other costs for the child." 2008 MCSF 3.03(A)(1). The MCSF manual sets forth a mathematical formula for determining the offset utilizing each parent's base child support obligation and average number of overnights. 2008 MCSF 3.03(A)(2).[3] "An offset for parental time generally applies to every

---

[2] The act was formerly known as the Support and Visitation Enforcement Act, but was renamed the Support and Parenting Time Enforcement Act. See MCL 552.601, as amended by 1996 PA 25, effective June 1, 1996.

[3]
$$\frac{(A_o)^3 (B_s) - (B_o)^3 (A_s)}{(A_o)^3 + (B_o)^3}$$

$A_o$ = Approximate annual number of overnights the children will likely spend with parent A

$B_o$ = Approximate annual number of overnights the children will likely spend with parent B

$A_s$ = Parent A's base support obligation

$B_s$ = Parent B's base support obligation

support determination whether in an initial determination or subsequent modification, whether or not previously given." 2008 MCSF 3.03(B). Moreover, the MCSF requires that the offset be calculated on the basis of *actual* overnights even if that is contrary to an existing order regarding parenting time. 2008 MCSF 3.03(C)(4) provides:

> Credit a parent for overnights a child lawfully and actually spends with that parent including those exercised outside the terms of the currently effective order. This may happen by agreement, or when one parent voluntarily foregoes time granted in the order. Do not consider overnights exercised in violation of an order.
>
> (a) If a parent produces credible evidence that the approximate number exercised differs from the number granted by the custody or parenting time order, credit the number according to the evidence without requiring someone to formally petition to modify the custody or parenting time order.
>
> (b) When the most recent support order deviated based on an agreement to use a number of overnights that differed from actual practice, absent some other change warranting modification, credible evidence of changed practices only includes an order changing the custody or parenting time schedule.

The record in this case shows that the parties acceded to their son's desire to not visit his mother. The trial court adopted the parties' agreement as its order regarding defendant's parenting time, providing that it be held "in abeyance until such time as (1) the parties agree otherwise, (2) [the son's] mental health counselor/therapist recommends parenting time, or (3) further Order of this Court." Consequently, plaintiff could not have violated the court's parenting-time order. Further, the evidence in the

---

**Note**: A negative result means that parent A pays and a positive result means parent B pays.

record is insufficient to support the trial court's determination that the son's "estrangement" from his mother was plaintiff's fault and that plaintiff engaged in "acts and behavior . . . which alienated [the son] from his mother." While the divorce proceeding damaged the relationship between mother and son, there is no evidence that plaintiff acted intentionally to encourage the son's attitude toward defendant. We therefore conclude that the trial court also erred by deviating from the MCSF on the basis of a clearly erroneous finding of fact.

In sum, we conclude the trial court erred because the Support and Parenting Time Enforcement Act does not provide for the enforcement of parenting-time rights by adjusting child support obligations. Other means exist to protect and enforce parenting time. See MCL 552.642 (makeup parenting time); MCL 552.644(2) (contempt sanctions). Michigan cases hold that parental rights (parenting time) are separate from parental obligations (child support). See *Rzadkowolski*, 237 Mich App at 409; see also *In re Beck*, 488 Mich 6, 8, 16; 793 NW2d 562 (2010), holding that a parent's obligation of support continued after parental rights were terminated because "parental rights are distinct from parental obligations," and the parent's duty of support had not been "modified or terminated by a court of competent jurisdiction." In addition, the MCSF specifically directs that the parenting-time offset be based on the *actual* overnights a child spends with a parent. 2008 MCSF 3.03(C)(4). This subsection of the MCSF recognizes that a parent may voluntarily not exercise rights to parenting time, as happened here. In reviewing the list of possible reasons for deviating from the formula that are set forth in 2008 MCSF 1.04(E), all relate to the economic support of the child, either the child's needs or a parent's ability to provide support. None of the listed factors suggests that purported interference with parenting-time rights may serve as a circumstance justi-

fying deviation. In fact, the effect of the trial court's deviation here is to increase the support available for one child at the expense of the support available to the other. So, for all the foregoing reasons, we hold that plaintiff's alleged complicity in alienating the parties' son from his mother is not a circumstance that renders the MCSF "unjust or inappropriate" within the meaning of MCL 552.605(2).

Because we vacate the child support provisions in the judgment of divorce and remand for reconsideration without deviation from the MCSF, we briefly note that the trial court recognized that its division of the martial property would have a significant effect on each party's income so that reconsideration of the amount of child support would be appropriate. The MCSF requires that defendant's income include what is or could be earned from her assets if they were invested. See 2008 MCSF 2.01(C)(5)(income includes interest and dividends); 2008 MCSF 2.06(A)("To the extent a parent's assets could be (but are not) used to generate regular income, a parent's income includes an imputed reasonable and regular investment return on those assets . . . ."). Plaintiff's debt expense to continue his farming operation must be deducted from his gross income to determine his "net income" from his farming operation. 2008 MCSF 2.01(C)(2); 2008 MCSF 2.01(E); see also *Borowsky*, 273 Mich App at 675-677 (applying the 2004 MCSF). Consequently, on remand, the trial court shall reconsider child support in light of the effect of the marital-property division on the parties' income and potential income.

### III. SPOUSAL SUPPORT

### A. STANDARD OF REVIEW

The award of spousal support is within the discretion of the trial court. MCL 552.23(1); *Berger v Berger*, 277

Mich App 700, 726; 747 NW2d 336 (2008). The trial
court's underlying factual findings are reviewed for
clear error. MCR 2.613(C). A reviewing court may
determine a finding is clearly erroneous only when, on
the basis of all the evidence, it is left with a definite and
firm conviction that a mistake has been made. *Beason v
Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). The
appellant has the burden to persuade the reviewing
court that a mistake has been committed, failing which
the trial court's findings may not be overturned. *Id.* at
804. If the trial court's findings are not clearly errone-
ous, the reviewing court must then decide whether the
dispositional ruling was fair and equitable in light of the
facts. *Sparks v Sparks*, 440 Mich 141, 151-152; 485
NW2d 893 (1992). The trial court's dispositional ruling
must be affirmed unless the reviewing court is firmly
convinced that it was inequitable. *Id.*

### B. ANALYSIS

Defendant has not shown that any of the trial court's
findings were clearly erroneous or that the trial court's
dispositional ruling was unfair or inequitable in light of
the facts. *Id.* So, the trial court's dispositional ruling
must be affirmed. *Berger*, 277 Mich App at 727.

We conclude that most of the spousal-support factors
indicate that spousal support is not necessary. Although
the marriage lasted a number of years, the parties are
still both relatively young, with identical educational
levels; each worked at farming all his and her adult life,
and each enjoys good health and the ability to work.
Although defendant was a stay-at-home mother, she
also worked for the farm. The trial court found that the
fault of the marital breakdown lay with plaintiff, but
this is but one of many factors for the court to consider.
*Sparks*, 440 Mich at 158; *Berger*, 277 Mich App at

726-727. In light of the significant award of property to defendant and the other factors noted above, defendant has not established that the award of temporary spousal support pending the distribution of martial property was inequitable. Defendant may invest the $518,000 cash award from the marital-property division to earn income, reduce her living expenses by paying off her mortgage, or fund education or training to pursue higher-paying employment opportunities. Defendant has not presented a persuasive argument that the trial court's dispositional ruling on spousal support was inequitable.

In light of the award of substantial income-producing property to defendant and the fact that both parties are able to support themselves, the trial court did not abuse its discretion by ordering only temporary spousal support through the date that the marital-property division was implemented. Defendant has not established clearly erroneous factual findings or presented a convincing argument that the trial court's dispositional ruling was inequitable.

### IV. ATTORNEY FEES

#### A. STANDARD OF REVIEW

Attorney fees are not recoverable as of right in a divorce action but may be awarded to enable a party to carry on or defend the action. MCL 552.13; MCR 3.206(C)(1). A party seeking attorney fees must establish both financial need and the ability of the other party to pay. MCR 3.206(C)(2)(a); *Woodington v Shokoohi*, 288 Mich App 352, 370; 792 NW2d 63 (2010). This Court reviews a trial court's decision to grant or deny attorney fees for an abuse of discretion; the court's findings of fact on which it bases its decision are

reviewed for clear error. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). The trial court abuses its discretion when its decision results in an outcome that falls outside the range of reasonable and principled outcomes. *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008). "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Woodington*, 288 Mich App at 370. This would include proving both financial need and the ability of the other party to pay, *Smith*, 278 Mich App at 207, as well as the amount of the claimed fees and their reasonableness, *Reed*, 265 Mich App at 165-166.

### B. ANALYSIS

Defendant argues that the trial court erred by awarding her only part of the attorney fees she incurred during the divorce proceeding. The record is not clear, but it appears that plaintiff paid for about half of the attorney fees defendant incurred through entry of the judgment of divorce. Defendant asserts that plaintiff should pay all her attorney fees. This is a close question. The record establishes defendant's financial need, at least through the implementation of the marital-property division, and that plaintiff had the ability to pay. The trial court denied defendant's request for the full payment of attorney fees because of the property division and its effect on the parties' income. Considering that we have already determined that the trial court did not clearly err by denying spousal support, we could find in favor of defendant on the basis that a party should not be required to invade assets to satisfy attorney fees when the party is relying on those same assets for support. *Woodington*, 288 Mich App at 370, citing *Gates v Gates*, 256 Mich App 420, 438-439; 664 NW2d 231 (2003).

On the other hand, defendant failed to present evidence in the trial court to establish the amount and reasonableness of the attorney fees claimed. *Reed*, 265 Mich App at 165-166. Consequently, we remand this issue to the trial court for defendant to provide the evidence necessary to meet her burden of proof with respect to her need and plaintiff's ability to pay, *Smith*, 278 Mich App 207, and the amount of the fees claimed and their reasonableness, *Reed*, 265 Mich App at 165-166.

### V. MEDICAL EXPENSES

Defendant last asserts error regarding certain medical expenses. We conclude that this claim fails because defendant presents it as a mere conclusory statement without citation to the record, legal authority, or any meaningful argument. See MCR 7.212(C)(7); *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Even if we were to reach the merits of defendant's claim, we would affirm. The expenses that defendant asks plaintiff to pay resulted from a purely elective medical procedure for which there was no health insurance coverage. The trial court did not abuse its discretion by ruling that defendant's uninsured, voluntary medical expenses were her own responsibility. Defendant has not shown any clear error in the trial court's findings of fact, and the court's dispositional ruling is fair and equitable. *Sparks*, 440 Mich at 151-152.

### VI. CONCLUSION

We affirm the trial court's dispositional rulings regarding spousal support and medical expenses. For the reasons stated in this opinion, we vacate the order for child support in the judgment of divorce and remand for

reconsideration without deviation from the MCSF in light of the parties' income as affected by the marital-property division, and for determination of the attorney fee issue. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

SAWYER, P.J., and FORT HOOD, J., concurred with MARKEY, J.