# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER LYNN DALY, also known as
JENNIFER LYNN WARD,

       Plaintiff-Appellant,

v

MATTHEW HUBERT WARD,

       Defendant-Appellee.

UNPUBLISHED
April 18, 2017

No. 333425
Jackson Circuit Court
LC No. 14-000401-DM

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Plaintiff, Jennifer Lynn Daly, appeals as of right the trial court's order granting defendant, Matthew Hubert Ward, physical custody of the parties' minor child, as well as ordering supervised parenting time and child support. We affirm.

## I. FACTUAL BACKGROUND

In April 2014, during the pendency of the parties' divorce, Daly received physical custody of the child and Ward received parenting time one night a week and every other weekend. At that time, the child's therapist, Dr. Marianna Nunez, recommended the parenting arrangement until the parties developed a positive co-parenting relationship. In December 2014, the trial court changed Ward's parenting time to four overnights a week, which was the parenting time arrangement when the parties' divorce was finalized in March 2015.

In August 2015, Ward filed an ex-parte motion to change custody. Ward asserted that Daly repeatedly made unwarranted complaints to Children's Protective Services (CPS) and used those complaints to deny him parenting time. Ward also asserted that Daly sent the child to his house with a recording device concealed in a toy doll. In a letter, Dr. Nunez supported changing the child's custody and expressed concerns about Daly's actions. The trial court entered an ex-parte order granting Ward physical custody.

Daly moved to set aside the ex-parte order because it was improper to change the child's custody without holding an evidentiary hearing. The trial court agreed that it had improperly changed custody and clarified that it had intended to suspend parenting time because of the potential harm to the child. Accordingly, the trial court vacated its initial ex-parte order and entered a new order. In the new order, the trial court ordered Dr. Nunez to supervise Daly's

-1-

parenting time and found that it was in the child's best interests to be placed with Ward pending a full custody hearing.

Following an extensive set of evidentiary hearings, in May 2016, the trial court found that the child had an established custodial environment with Ward and it was in the child's best interests to grant Ward physical custody.

## II. STANDARDS OF REVIEW

This Court will affirm a custody order unless the trial court's findings of fact are against the great weight of the evidence, it abused its discretion, or it committed clear legal error on a major issue. MCL 722.28; *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). A finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Id*. We review child support orders for an abuse of discretion. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007). The trial court abuses its discretion when its decision falls outside range of principled outcomes. *Ewald v Ewald*, 292 Mich App 706, 725; 810 NW2d 396 (2011).

## III. ESTABLISHED CUSTODIAL ENVIRONMENT

Daly argues that the trial court erred by finding that the child had an established custodial environment with Ward because it based its finding on an improper change of custody. We disagree.

"An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). The child's established custodial environment does not depend on how the environment was created. *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995). The focus is on the child's circumstances, not on how those circumstances arose. *Id*. "[I]t makes no difference whether that environment was created by a court order, without a court order, in violation of a court order, or by a court order that was subsequently reversed." *Id*. at 388-389.

In this case, the trial court found that the child had an established custodial environment with Ward. The evidence supported its finding. The child had been living solely with Ward since August 2015—regardless of how that arrangement came about—and the child's teaching assistant, counselor, and Ward each testified about the ways in which the child looked to him for guidance. The propriety of the trial court's temporary order, and whether the trial court properly vacated and replaced that order, are simply irrelevant to this analysis. We conclude that the trial court's finding that the child had an established custodial environment with Ward was not against the great weight of the evidence.

## IV. SUPERVISED PARENTING TIME

Daly next argues that the trial court erred by ordering her parenting time supervised. This issue is moot.

"As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). An issue is moot if it is impossible for this Court to grant relief. *Id*. On July 27, 2016, the trial court vacated its order regarding supervised parenting time and ordered Daly to have parenting time one night a week, every other weekend, and alternating holidays. Daly does not address the July 2016 order in her brief or explain why we should consider this moot issue. We therefore decline to consider it.

## V. THE CHILD'S BEST INTERESTS

Daly contends that the trial court's findings regarding several best interest factors were against the great weight of the evidence. We disagree.

The trial court must decide the child's custody on the basis of the child's best interests. MCL 722.25(1); see *Berger*, 277 Mich App at 705. To determine what is in the child's best interests, the trial court must consider the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (f) The moral fitness of the parties involved.

> (g) The mental and physical health of the parties involved.

> (h) The home, school, and community record of the child.

> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

If the proposed modification does not change the child's custodial environment, the moving party must show by a preponderance of the evidence that the change is in the child's best interests. *Pierron*, 486 Mich at 93.

At the evidentiary hearing, the child's teaching assistant testified that the child had attended ABC Academy while under both Ward and Daly's care. Since being in Ward's care, the child was more outgoing, participated more, socialized better, and did not pick his fingernails. Employees of the Michigan Department of Health and Human Services testified that repeated CPS complaints were made against Ward, but those complaints were not substantiated as abuse or neglect. Dr. Janice Lazar, who conducted psychological evaluations of both parties, was concerned that Daly was engaging in a clear and concerted effort to alienate the child's affection from Ward and was not willing to recognize that the child's injuries arose from typical childhood accidents. Dr. Lazar testified that it was concerning that though the evidence did not support that the child was abused or neglected, Daly persisted in believing that the child was abused.

Following the evidentiary hearing, the trial court found that factors (b) and (c) favored Ward because Daly was involved in 28 unsubstantiated CPS referrals and because Ward provided a more consistent upbringing for the child regarding his schooling and disposition. It found that factor (g) favored Ward because of Dr. Lazar's concerns, which it found more credible than the opposing evidence. And it found that factor (h) favored Ward because the child had a more favorable school record and was thriving in school under Ward's care. While the trial court never expressly stated that it found that a preponderance of the evidence supported changing the child's custody to Ward, it did state that sufficient evidence warranted a change of custody.

The evidence does not clearly preponderate against the trial court's findings that these factors favored Ward, nor its findings that the rest of the factors were relatively equal between the parties. We conclude that these findings were not against the great weight of the evidence, and the trial court did not err by changing the child's custody to Ward.

## VI. CHILD SUPPORT

Daly next argues that the trial court erred by ordering her to pay child support during the temporary order and by failing to account for Ward's child support arrearages.

The record does not support Daly's assertion that the trial court failed to account for Ward's child support arrearage. The trial court expressly offset Daly's obligations by Ward's arrearage during its extensive calculations at an evidentiary hearing on January 27, 2016. The trial court's subsequent order required Daly to pay support in the amount determined at that hearing, and thus it accounted for Ward's arrearages.

We also reject Daly's assertion that the trial court violated her due process by requiring her to pay child support from August 2015. As an initial matter, Daly has failed to preserve this issue for our review. Daly argued below that child support was improper because the child's custody had not changed as a result of the ex-parte order, but she did not raise her due process argument below. To preserve an issue, the appellant must challenge it before the trial court on the same grounds as he or she challenges it on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Therefore, this issue is unpreserved, and we will review it for plain error affecting Daly's substantial rights. See *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008).

"Child support is for the benefit of the child . . . ." *Fisher*, 276 Mich App at 429. Regardless of how the child came to be in Ward's care, the child was in fact in Ward's care from the point in time child support was calculated. Additionally, Daly received notice and a hearing regarding the issue in January 2016. We conclude that the trial court did not plainly err by calculating child support from the point in time that the child was in Ward's care.

We affirm.

/s/ Peter D. O'Connell
/s/ Patrick M. Meter