*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERRI DENISE PATTERSON,

        Plaintiff-Appellee,

v

WILLIAM JAMES PATTERSON III,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2023

No. 363748
Jackson Circuit Court
LC No. 17-003184-DM

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

In an unpublished opinion issued in 2019, we remanded this divorce case to the trial court for a ruling on a motion for a new trial filed by defendant, William James Patterson III. *Patterson v Patterson*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2019 (Docket No. 347415). On remand, the trial court conducted a bench trial in 2021 and then issued a comprehensive written opinion on February 22, 2022, as well as a Uniform Child Support Order (UCSO) entered on October 27, 2022. Those rulings finally resolved all but three discrete issues now on appeal: (1) division of the parties' marital property; (2) application of the Michigan Child Support Formula (MCSF) in determining defendant's child-support obligation; and (3) defendant's request for an award of attorney fees against plaintiff, Terri Denise Patterson. We affirm the trial court's rulings except for the division of the parties' marital property. To address that remaining issue, we remand the case to permit the trial court to render a credibility determination concerning defendant's testimony that he spent $90,000 in student-loan money for household expenses and to conduct any additional proceedings warranted by that determination.

## I. FACTUAL BACKGROUND

The parties were married in 2008. Plaintiff filed for divorce in December 2017, requesting primary physical custody of the parties' two minor children, and the trial court entered a judgment of divorce (JOD) in 2018. Defendant successfully appealed the trial court's denial of his motion for a new trial, so the case returned to the trial court on remand. The case thereafter was reassigned to a new judge, who conducted a three-day bench trial on July 19, 2021, September 28, 2021, and December 20, 2021. What emerged during the new trial was evidence about the parties' children's

reaction to an incident involving defendant that triggered an investigation by Children's Protective Services (CPS). Defendant testified that parenting time was reinstated after the CPS investigation, but the two children came to his house and went straight to their rooms, where they remained until parenting time was over. Defendant explained that he had not had one positive visit since the CPS investigation took place. Plaintiff stated that she supported reconciliation between defendant and the two children, but at the same time she offered unconditional support for the children and their perception of events, going so far as to tell them to "just go to your room and stay together. Don't say anything to" defendant and packing food for them to take to parenting time in support of their refusal to eat at defendant's house.

Defendant's counsel cross-examined plaintiff about inconsistencies between her testimony at the first trial and what she claimed about domestic violence on remand, whether she had had an extramarital affair, and whether she and one of her paramours had sex in her classroom or a school office. Defendant's counsel exposed inconsistencies between plaintiff's testimony at the first trial that her only health issue was an eating disorder that she had in high school and evidence that she had memory issues, headaches, fatigue, and dizziness in 2015, that she had seen a neurologist, and that she had undergone tests, including a magnetic resonance imaging scan and a spinal tap.

The trial court found that the minor children had an established custodial environment with plaintiff, that the minimal parenting time awarded to defendant had been interrupted in September 2020 because of the CPS investigation, and that, after the allegations were unsubstantiated by CPS and parenting time resumed, the children spent their time at defendant's house in their rooms. The court deemed the ongoing estrangement between defendant and the children to be the single most significant issue in the case, and the court found, by clear and convincing evidence, that plaintiff's actions "perpetrated the estrangement beyond any reasonable efforts to protect" the children and that the children had been negatively impacted by their continued alienation from defendant. The court found that reconciliation efforts would be futile without an equal balance between the parties. Therefore, the court awarded the parties joint legal and joint physical custody of both of their minor children.

With respect to parenting time, the trial court was convinced that both children's negative perceptions of defendant did not reflect reality, that defendant's actions toward them in 2020 did not rise to the level of sexual abuse, and that defendant did not pose a risk of harm to the children. The court concluded that the family would need consistent therapeutic support for the children to progress toward a healthy relationship with both parents. To satisfy the dual goals of reestablishing defendant's relationship with the children and decreasing their "over-reliance and enmeshment" with plaintiff, the trial court set up a three-phased parenting-time schedule that gradually advanced toward plaintiff and defendant having joint physical custody. The transition to the final phase of parenting time was scheduled to be completed by March 2023.

In dividing the parties' marital property, the trial court awarded defendant the marital home and all related indebtedness and gave plaintiff 50% of the equity in the home as of the date plaintiff moved out, made defendant liable for his student loans, and denied defendant's request for attorney fees. Defendant unsuccessfully sought reconsideration. The trial court's findings and dispositions were reflected in the June 7, 2022 JOD. The only issue left open by the JOD was modification of defendant's child-support obligation, which was resolved by the entry of a UCSO on October 27, 2022. This appeal followed.

## II. LEGAL ANALYSIS

Defendant presents three issues for resolution on appeal. First, he contests the trial court's division of the marital property. Second, he challenges the application of the MCSF in determining his child-support obligation. Third, he faults the trial court for failing to order plaintiff to pay him attorney fees based on plaintiff's misconduct during the pendency of the divorce proceedings. We shall address these three issues in turn.[1]

## A. PROPERTY DIVISION

Defendant asserts that the trial court's property division was inequitable because the court did not award him the premarital equity in his house, did not use the same valuation date for the parties' retirement accounts as it did for the marital home, and did not categorize as marital debt approximately $90,000 of student-loan money that he used for household expenses. "In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). A finding of fact is clearly erroneous only when "this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). This Court " 'reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable.' " *Id*.

The record does not support defendant's assertion that the trial court erred by not awarding him the premarital equity in the marital home. Defendant purchased the home several years before the parties were married, so any increase in the home's equity before the marriage would generally be treated as defendant's separate asset. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). In an order issued after the trial took place on remand, the trial court awarded plaintiff "50% of the equity in the marital home as of the date plaintiff moved out . . . ." That ruling was reflected in the JOD, which states that plaintiff was entitled to half the equity in the marital home "as of the date she moved out." In addition, the JOD provides a method for calculating that equity that measures the equity from the time of the marriage to the date that plaintiff moved out, thereby leaving the premarital equity to defendant. Because the JOD gives instructions for the calculation of plaintiff's equity in the marital home that clearly excludes premarital equity, defendant has not

---

[1] Defendant also contests rulings in a November 3, 2022 order issued after the entry of the UCSO, but those issues are beyond the scope of this appeal. Defendant claimed an appeal of right from the UCSO entered on October 27, 2022. That UCSO constitutes a final order because it resolved the last issue left open by the JOD on June 7, 2022. See MCR 7.202(6)(a)(*i*). As a result, defendant may challenge the UCSO, the 2022 JOD, and the trial court's prior orders, but not an order signed and entered *after* entry of the UCSO. Specifically, the trial court conducted an evidentiary hearing on October 24, 2022, and entered an order on November 3, 2022, memorializing its oral rulings at the evidentiary hearing. Defendant's assertion that the trial court erred in those rulings by denying defendant the attorney fees incurred in filing and arguing a motion to show cause and by denying a challenge to the trial court's affirmation of a school change for one of the parties' minor children are outside the scope of this appeal.

established that the trial court's property division denied him his premarital equity in the marital home.

Defendant likewise has not established that the trial court erred by using a valuation date for the parties' retirement assets that differed from the appraisal dates for the marital home. Courts typically value assets as of the date of trial or judgment but have discretion to use some other date. *Byington v Byington*, 224 Mich App 103, 114 n 4; 568 NW2d 141 (1997). The trial court does not have to use the same valuation date for all the assets. *Gates v Gates*, 256 Mich App 420, 427; 664 NW2d 231 (2003) (noting that it is "well settled that decisions regarding the time of valuation of property in a divorce action are matters within the discretion of the trial court"). Nevertheless, defendant contends that the remand instructions after his initial appeal required the trial court on remand "to either use the date of separation for the valuation of all marital property or explain why it treated some property differently." We reject this argument as an attempt to expand the remand instructions to issues that defendant did not raise in his initial appeal. Defendant's first appeal did not present any questions that involved the date of valuation of the parties' Jackson Public Schools retirement accounts, nor may our previous opinion be read as restricting the trial court's discretion on remand by requiring it to use the same valuation date for all marital assets. Consideration was limited to the impact that defendant's newly discovered evidence might have on the trial court's determinations regarding custody and the equity in the marital home. We recognized that the trial court's marital-property distribution could remain the same on remand and, if it did, an explanation was needed only with respect to the trial court's selection of the end date for "appraisal purposes," i.e., for purposes of the appraisal of the marital home. For these reasons, defendant has failed to establish that the trial court erred by setting the date of entry of the first JOD as the valuation date for the parties' retirement assets.

Defendant next argues that the trial court erred by making him liable for student loans that were used for marital expenses. The portion of a student loan used for household expenses may be considered a marital debt. Defendant testified that he used approximately $90,000 of the student loans he took out while pursuing his Ph.D. to pay household expenses. Defendant did not provide any supporting documentation, and it is not clear from the trial court's decision whether the court believed that defendant might have spent some of the student-loan money on household expenses. The trial court's assignment of the student loan to defendant may suggest that the court found his testimony incredible, but for the court's inference that the student loans were defendant's separate debt because it could be inferred that defendant did not consult plaintiff before taking out student-loan money. This suggests that the trial court may have thought that part of the student-loan money went to household expenses. But the trial court also stated that defendant "is solely liable for his own student loans used to attain his Ph.D.," which could mean either that defendant is liable for all the student loans because they were used to attain the Ph.D. or that defendant is responsible for that portion of the student loans used to attain his degree. The trial court did not make a credibility determination, and we cannot infer one from its ruling. Thus, because the trial court's decision on defendant's student loans is unclear, we must remand for the limited purpose of allowing the trial court to clarify its ruling by making a credibility determination on the basis of the existing record and, if necessary, to conduct further proceedings warranted by that determination.

## B. APPLICATION OF THE MCSF

Defendant next claims that the trial court misapplied the MCSF when calculating his child-support obligation. We review de novo as a legal question whether the trial court properly applied the MCSF. *Ewald v Ewald*, 292 Mich App 706, 714; 810 NW2d 396 (2011). This Court reviews the trial court's factual findings for clear error and the court's discretionary rulings for an abuse of discretion. *Id*. at 714-715. The trial court abuses its discretion if it selects an outcome outside the range of reasonable and principled outcomes. *Id*. at 715. An abuse of discretion also occurs "when it relies on a legally improper reason for departing from the MCSF in establishing a parent's child support obligation." *Id*.

Trial courts must presumptively follow the MCSF when determining parents' child-support obligations. *Id*. There are three components to a parent's child-support obligation pursuant to the MCSF: a base support obligation; medical support obligations; and child care expense obligations. 2021 MCSF 3.01(A). In calculating the base support obligation, parental-time offsets are used to adjust the amount of support based on the number of overnights a child spends with each parent. 2021 MCSF 3.03. A parent gets credit only for "overnights a child lawfully and actually spends with that parent including those exercised outside the terms of the currently effective order." 2021 MCSF 3.03(C)(4). Overnights may be exercised outside the terms of the governing child-support order "by agreement, or when one parent voluntarily foregoes time granted in the order." 2021 MCSF 3.03(C)(4). Courts cannot "consider overnights exercised in violation of that order." 2021 MCSF 3.03(C)(4). According to MCL 552.605(2), the trial court may enter a child-support order that deviates from the MCSF "if the court determines from the facts of the case that application of the [MCSF] would be unjust or inappropriate . . . ." The MCSF identifies 20 situations in which strict application of the MCSF may result in an unjust or inappropriate result. 2021 MCSF 1.04(E).

Here, there is no dispute the governing parenting-time order awarded defendant overnight parenting time. Nor is there any dispute that defendant had not exercised overnight parenting time in more than a year. Defendant contends that the trial court should have departed from the MCSF by crediting him with the overnights that were prescribed by the parenting-time order because he did not voluntarily forgo his parenting time. Rather, plaintiff was unlawfully exercising parenting time that should have been his, i.e., in violation of the parenting-time order.

Deviating from the MCSF to punish the other parent or to enforce a parenting-time order was rejected in *Ewald*, 292 Mich App at 715, where this Court explained that "a parent's alleged interference with the parenting-time rights of the other parent was not a circumstance that would permit deviation from the MCSF under MCL 552.605(2)." "[T]he MCSF requires that the offset be calculated on the basis of *actual* overnights even if that is contrary to an existing order regarding parenting time." *Id*. at 720. The Support and Parenting Time Enforcement Act, MCL 552.601 *et seq*., affords the means for enforcing parenting time, including granting makeup parenting time to account for deprivation of parenting time and holding a parent in contempt of court for violating a parenting-time order and subjecting that parent to sanctions. *Id*. at 718. But the Support and Parenting Time Act "does not provide for enforcement of parenting-time rights by adjusting child support obligations." *Id*. at 715. Parental rights, such as parenting time, are separate from parental obligations, such as child support. *Id*. at 721. The purpose of child support is to meet the child's needs. *Evink v Evink*, 214 Mich App 172, 176; 542 NW2d 328 (1995). To that end, the MCSF "specifically directs that the parenting-time offset be based on the *actual* overnights a child spends

-5-

with a parent." *Ewald*, 292 Mich App at 721. Thus, the UCSO properly credited defendant with zero overnights even though the governing parenting-time order awarded him overnights. Even if plaintiff interfered with defendant's exercise of his overnights, neither the MCSF itself nor binding precedent authorizes a deviation from application of the MCSF to enforce a parenting-time order. Accordingly, the trial court did not err by its application of the MCSF.

## C. ATTORNEY FEES

Defendant also asserts that the trial court erred by denying his request for attorney fees that he incurred on remand. This Court reviews a trial court's decision to award attorney fees as part of a JOD for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). This Court reviews factual findings underlying the trial court's decision for clear error. *Reed*, 265 Mich App at 164. A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made. *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020). In contrast, this Court reviews de novo all questions of law. *Id.*

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed*, 265 Mich App at 164. But MCR 3.206(D)(2)(b) permits an attorney-fee award in domestic relations cases when "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply." Further, a common-law exception allows for an award of attorney fees if "the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct during the course of the litigation." *Id.* at 165 (quotation marks and citation omitted). Attorney fees awarded under this exception must have been incurred because of the opposing party's misconduct and they must be reasonable. See *id.* at 165-166.

Defendant contends he was entitled to the attorney fees incurred on remand because it was plaintiff's untruthfulness at the first trial that necessitated a new trial. The trial court acknowledged defendant's position that plaintiff's failure to disclose the whole truth during the original trial was the underlying cause of his legal expenses for a new trial. But the trial court accurately noted that the "primary reason for the case remand on appeal was the appellate court's determination that the trial court judge failed to address the appropriate standards at trial and at the subsequent motion for a new trial." This Court remanded the matter with instructions "to either articulate a proper reason for denying defendant's motion [for a new trial] or grant a new trial." *Patterson*, unpub op at 1. After the case returned to the trial court, the judge then assigned to the case decided, after a status conference, that a new trial was necessary so that she could rely on her own decisions instead of those made by her predecessor, so she scheduled a new trial for April 2020. This suggests that if the findings of the original trial judge had been adequate, a new trial may have been unnecessary.

Defendant also requested attorney fees for pretrial motions that he alleged were attributable to plaintiff's systematic efforts to alienate the children from him. Specifically, defendant contends that he spent attorney fees to defend against the effort to suspend his parenting time in September 2020, to file a motion for a psychological evaluation of the family in December 2020, and to file a motion regarding the children's counseling in February 2022. The trial court acknowledged that

the children's animosity toward defendant arose from their perception of an incident that happened in the summer of 2020. There is no evidence that plaintiff manipulated the children into viewing defendant's conduct as improper, but the record reveals that plaintiff exploited the situation. The trial court observed that plaintiff reinforced the children's negative perception that defendant was a danger to them and communicated directly with the children about defendant. As to defendant, the trial court observed that defendant had not always managed the children's rejection well, that his maladroit responses tended to make matters worse, and that he did not seek professional help to assist him in addressing the children's rejection of him until the trial court ordered counseling. On this record, the trial court's decision to deny attorney fees to defendant did not fall outside the range of principled outcomes. Therefore, we find no abuse of discretion. See *Richards*, 310 Mich App at 699.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates