*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE PATRICE CALCO,

Plaintiff-Appellee,

v

ROBERT MICHAEL CALCO,

Defendant-Appellant.

UNPUBLISHED
October 24, 2019

No. 344932
Kalamazoo Circuit Court
Family Division
LC No. 2006-005943-DM

Before: MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant Robert Michael Calco appeals by leave granted the family court's post-judgment order awarding plaintiff Michelle Patrice Calco spousal support in the amount of $1,350 per month and $3,000 in attorney fees. We vacate the award of spousal support and reverse and remand with respect to the attorney fee award.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties married in January 1988, and they had four children, although the oldest child died in December 2005. Plaintiff filed for divorce in May 2006, and defendant moved out of the marital home in November 2006. A divorce trial was conducted by the family court in 2007. Under the terms of the judgment of divorce, the parties had joint legal custody of the children: Plaintiff was awarded primary physical custody of two of the children, and defendant was given primary physical custody of the third child. Both parties were awarded reasonable parenting time, and the marital assets were equitably divided, with plaintiff receiving the marital home. Pursuant to a uniform child support order incorporated by reference in the divorce judgment, defendant was obligated to pay child support to plaintiff in the amount of $1,271 per month until September 1, 2008, at which time it was to be reduced to $982.

With respect to spousal support, in its written opinion after trial, the family court declared that plaintiff had "a need for rehabilitative spousal support." The court further observed that plaintiff was "extremely intelligent and talented" and that she should be able to find substantial employment in the next few years if she put her mind to it. The family court recognized,

however, that it would take time for plaintiff "to work into full employment status, both from a professional standpoint and an emotional standpoint.[1]

The family court ordered defendant to pay spousal support in the amount of $1,500 per month beginning May 18, 2007, and continuing until September 1, 2007, at which time spousal support was to be reduced to $1,200 per month for a one-year period ending on September 1, 2008. For a three-year period starting on September 1, 2008, defendant was ordered to pay $800 per month to plaintiff in spousal support. The family court indicated in its written opinion that the spousal support award was modifiable. The judgment of divorce was entered on October 1, 2007, and it incorporated by reference a uniform spousal support order that contained the monetary terms of the family court's written opinion discussed above.

Ten years later, in October 2017, plaintiff filed a motion, and later an amended motion, to modify the spousal support award in which she requested an order reinstating spousal support payments. The family court held an evidentiary hearing on plaintiff's motion on March 3, 2018.

Plaintiff testified that she was 53 years old, in good health, and that she had lived in the former marital home since the divorce. Plaintiff asserted that at the time the judgment of divorce was entered, defendant had an apartment. But according to plaintiff, soon after the divorce was finalized, defendant moved back into the family home, but he also kept his apartment. Plaintiff testified that defendant lived in the house until March 2017. Plaintiff claimed that before moving out of the home, defendant only spent two or three hours a week at his apartment. Plaintiff viewed herself and defendant as being a couple during the ten years following the divorce. Indeed, plaintiff testified that the parties presented themselves to the public as a couple.

Plaintiff testified that her familial role during the 10 years after the divorce was the same as it was during the marriage. She did "everything for everyone." Plaintiff testified that she went grocery shopping, drove the children around, and took care of defendant. Plaintiff claimed that defendant also kept the same routine. He went to work every day and took care of the lawn and snow shoveling. Plaintiff asserted that, during those 10 years, defendant paid for "[e]very[] single thing we ever did." He transferred $2,200 a month to plaintiff's bank account and covered the cost of restaurants, movies, and family vacations. Plaintiff testified that the parties had a routine of going to Sam's Club every weekend, and defendant always paid for their purchases. Plaintiff maintained that defendant, contrary to past practices following the divorce, stopped depositing money in plaintiff's bank account in October 2017. Defendant was paying $436 per month in child support in 2017, and the payments were apparently going through the Friend of the Court. In 2017, only one of the parties' three children remained a minor.

---

[1] The family court also found that plaintiff could be "assertive and controlling," noting that it had "to admonish her a number of times during the first day of trial relating to her conduct in the courtroom." The court further remarked, "Her comments and attitude, not only from the witness stand but also at counsel table, were indicative of an individual who does and says what she wants."

Plaintiff testified that she has a bachelor's degree in business and an MBA in supply chain management, but that she had never worked in supply chain management. Plaintiff claimed that following the divorce she sent out approximately 2,000 resumes. The only job offer she received was for an entry level analyst-buyer position in Texas. Plaintiff took the job, which paid $50,000 annually, and moved to Texas. She quit the job, however, after a couple of months. Plaintiff testified that she flew from Texas back to Michigan every weekend, spending almost all of the money she made on airfare, because she still had to take care of the parties' children, who were living in the marital home with defendant. According to plaintiff, she and defendant decided that it was best for "all of us" that she return to Michigan. Plaintiff testified that had she stayed in Texas, defendant and the children would have been worse off.

In 2017, plaintiff earned approximately $27,000. She taught as an adjunct professor at Western Michigan University[2] and Kalamazoo Community College, taught classes at Portage Public Schools regarding the process of selling merchandise on eBay, and taught communication skills to students at Western Michigan University School of Medicine. Plaintiff also hosted an international student. With respect to her employment as a teacher, plaintiff worked approximately 30 total hours per week. In each year from 2012 through 2016, plaintiff earned annual income ranging from $18,600 to $22,800.

Plaintiff testified that she had approximately $30,000 in a bank account, which was all the money that she had. The judgment of divorce had awarded her $30,000 in cash. She was able to save this money for emergency purposes because defendant gave her money every month. But now that plaintiff was not receiving any funds from defendant, the amount in the bank account was beginning to dwindle. Plaintiff testified that she had no debt.

Plaintiff indicated that she was seeking $5,000 a month in spousal support for the remainder of her life. Plaintiff also claimed that she had incurred approximately $5,000 in attorney fees and did not have the ability to pay them.

Defendant, who was also 53 years old and healthy, testified that he is employed by PNC Bank as chief operating officer of its product line. He had worked in the banking industry since 1986. At the time the divorce judgment was entered, defendant was employed by National City Bank. Defendant testified that his annual salary back in 2007 was approximately $103,500, and he acknowledged that his last pay stub for 2017 indicated that his gross earnings were $216,070. According to defendant, his annual salary was $145,000, and anything he earned beyond that was incentive pay. Defendant was unsure whether he would receive any incentive pay in 2018. Defendant's income in 2015 was $163,759, and in 2016 it was $174,820. Except for the payment of child support, defendant was not currently supporting anyone but himself.

Defendant testified that he currently lived in an apartment. Defendant further testified that following the divorce the parties jointly parented the children for several years and did so on friendly terms. Defendant denied that he continued to live in the former marital home after the

---

[2] This was plaintiff's highest paying job. In 2017, she had income of $19,710 from Western Michigan University.

divorce. According to defendant, he had an apartment and often returned to his apartment at night after plaintiff and the children went to bed. This was his "standing operating procedure," except for times when plaintiff became "very angry, very violent." Defendant would then leave the house and not return for a period of time. Defendant claimed that he never kept any possessions at the family home. On occasions when the weather was bad, defendant would spend the night at the house. Defendant acknowledged that he had made many trips to Sam's Club and that he paid for the purchases. Defendant also conceded that a list plaintiff had prepared showing transfers from his bank account to her bank account was accurate. Defendant asserted that he had provided generously for his children and that most of the time he gave the money directly to plaintiff.[3] His generosity continued until plaintiff became extremely violent. Defendant maintained that for years following the divorce, he "abided by" plaintiff's rules. Obeying her rules allowed defendant to see the parties' children every day. Defendant claimed that plaintiff would at times threaten to keep the children away from him on a permanent basis. She banned him from taking the children to school in early 2017 although he had done so for many years. Defendant testified that plaintiff's "attacks and stuff" began in 2017. Defendant contended that plaintiff made regular efforts to get him in trouble with his employer and continually threatened, stalked, and harassed him, which led to a short-lived personal protection order against plaintiff.[4]

Defendant testified that following the divorce he and plaintiff greatly disagreed regarding whether she should work. Defendant claimed that he never told plaintiff that she should stay home and not have a job. Defendant asserted that plaintiff had an opportunity to become a full professor at Western Michigan University but refused to apply for the position. Defendant maintained that he did nothing to prevent plaintiff from earning more than $28,000 a year.

The family court issued a seven-page opinion in June 2018. In the opinion, the family court listed the factors that a court should consider in determining whether to order spousal support. The court next summarized the testimony given by the parties at the evidentiary hearing. The family court then observed:

> This Court finds that it is more than likely that the Defendant kept his apartment and stayed with the Plaintiff and the minor children on occasion, but did provide the Plaintiff and the minor children with food and items including groceries from Sam's Club as well as paid the Plaintiff $2,200 a month for this entire period.

> * * *

> This is indeed an especially odd situation where the parties who have divorced essentially continued to act as married subsequent to the entrance of the Judgment of Divorce. In any event, it appears that at some point during the

---

[3] Defendant claimed that some of the transfers constituted loans to plaintiff.

[4] A stipulated mutual restraining order was entered by the court in December 2017.

summer of 2017, the parties had a disagreement [leading] . . . to the Defendant no longer being willing to financially contribute to the Plaintiff and her household and the Plaintiff no longer wanting the Defendant to stay with her in her home. There has indeed been a change of circumstances since the entrance of the Judgment of Divorce that would entitle the Plaintiff to have the Court reconsider the issue of spousal support. She financially has become dependent upon and relied upon the Defendant's financial contributions to her over the years. The parties now apparently want to go their separate ways.

The family court then summarized more of the testimony, focusing on the detailed evidence regarding plaintiff's monthly living expenses.[5] Next, the family court stated and ruled:

It appears that the Plaintiff is requesting more money than she really is [in] need of because she has a history of using the funds that the Defendant has been giving to her over the last few years to also take care of her adult children. The Defendant is willing and able to financially help out his adult children; however, his relationship with them is not very good. He blames this on the Plaintiff; however, the Court finds that he has also contributed to his poor relationship with all of his children. In any event, this Court finds that the adult children have the ability and means to work and take care of their expenses on their own, and should not be dependent on their mother.

This Court finds that, given the education and experience of the Plaintiff, she should be earning at least $45,000.00 per year and, therefore, imputes that income to her. That means that she should probably be receiving approximately $3,000.00 net a month. She should also be receiving child support from the Defendant in the neighborhood of $1,600.00 (net) per month.[6]

Given the Court's determination of her expenses, they are in the $3,500.00 per month range. . . . Her needs would be reduced when [the youngest child] graduates from high school and moves out; however, she would no longer be receiving child support at that time.

Given the fact that the Defendant has been giving the Plaintiff at least $2,200.00 a month, as well as providing groceries from Sam's and other stores, and taking himself and the minor children on vacations, the Defendant clearly has the ability to pay the Plaintiff spousal support. Given the fact that the Plaintiff has had the expectation of the $2,200.00 per month from the Defendant, as well as

---

[5] The family court noted that defendant testified that he rents an apartment and has a girlfriend "but provided no testimony or evidence of his own living expenses."

[6] Earlier in its opinion, the family court noted that a recalculation of defendant's monthly child support obligation, which was currently $436, was pending before a referee.

receiving other goods, she has the expectation to continue at the same standard of living.

Considering the factors stated above, the incomes of the parties and their needs, the Court finds that it would be reasonable and equitable for this Court to order additional post-Judgment spousal support in the amount of $1,350.00 per month.[7]

The family court also ordered defendant to pay plaintiff $3,000 to cover a portion of her attorney fees incurred in the matter. On that issue, the court reasoned:

The Plaintiff is also requesting attorney fees. She has incurred them in the amount of $4,500.00 to pursue this case. She is up-to-date on her bills and has $30,000.00 in savings. She indicates that she is chipping-away on the savings because she is no longer receiving the $2,200.00 a month from the Defendant. Because of the extremely large disparity between incomes, this Court finds that it is reasonable and equitable to award attorney fees in this case. The Defendant shall pay $3,000.00 of the Plaintiff's attorney fees within 60 days of the date of this decision.

In an order entered on July 16, 2018, the family court ordered defendant, effective January 1, 2018, to pay plaintiff monthly spousal support in the amount of $1,350. The order also required defendant to pay $3,000 to plaintiff for attorney fees.[8] Defendant appeals by leave granted the family court's ruling. *Calco v Calco*, unpublished order of the Court of Appeals entered December 28, 2018 (Docket No. 344932).

## II. ANALYSIS

## A. SPOUSAL SUPPORT

Defendant argues that the family court abused its discretion by reinstating spousal support after plaintiff failed to obtain fulltime employment as contemplated and required by the judgment of divorce and by awarding spousal support in an amount that exceeded plaintiff's needs and the amount granted in the divorce judgment. Defendant contends that there was no change of circumstances sufficient to justify revisiting and modifying spousal support. Defendant further maintains that spousal support was unwarranted because plaintiff is capable of working and earning a meaningful salary.

---

[7] The order that was subsequently entered by the court indicated that spousal support would continue until further order of the court.

[8] We note that a uniform child support order was also entered, requiring defendant to pay $1,600 per month with respect to the one remaining minor child who turns 18 years old on December 1, 2019. Child support is not at issue in this appeal.

We review a trial court's award of spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). Any findings of fact related to a spousal support award are reviewed for clear error. *Id.* A finding of fact "is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id.* Deference is given to a trial court's findings of fact that are based on the credibility of witnesses. *Id.*

MCL 552.23(1) contemplates a case-by-case approach in determining an award of spousal support. *Loutts*, 298 Mich App at 29-30.[9] "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Id.* at 32. A court should consider all relevant factors in determining an appropriate award of spousal support, including:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356 (citation omitted).]

Rehabilitative spousal support is intended to allow a party to assimilate into the work force and establish economic self-sufficiency. See *Friend v Friend*, 486 Mich 1035; 783 NW2d 122 (2010). "Spousal support does not follow a strict formula." *Loutts*, 298 Mich App at 30.

MCL 552.28 provides in pertinent part:

---

[9] MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

On petition of either party, after a judgment for alimony . . . and subject to [MCL 552.17], the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

MCL 552.28 generally authorizes a court to modify an award of spousal support, and it provides a statutory right to litigants to seek modification of spousal support. *Allard v Allard*, 318 Mich App 583, 599; 899 NW2d 420 (2017); *Staple v Staple*, 241 Mich App 562, 568; 616 NW2d 219 (2000).

Our Supreme Court was "persuaded that the proper reading of the statute is that the Legislature intends, in cases in which alimony is initially ordered, that the court retain the power to make necessary modifications in appropriate circumstances." *Rickner v Frederick*, 459 Mich 371, 379; 590 NW2d 288 (1999). "In general, a trial court may modify child or spousal support after the judgment has entered if there is a change in circumstances." *Lemmen v Lemmen*, 481 Mich 164, 166; 749 NW2d 255 (2008). Such a modification "must be based on new facts or changed circumstances arising since the judgment of divorce." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000); see also *Gates v Gates*, 256 Mich App 420, 434; 664 NW2d 231 (2003). "By definition, changed circumstances cannot involve facts and circumstances that existed at the time the court originally entered a judgment." *Laffin v Laffin*, 280 Mich App 513, 519; 760 NW2d 738 (2008).

With respect to whether there was a change of circumstances, we find it necessary to first identify the "circumstances" that triggered plaintiff's motion to modify the spousal support award and then determine whether they truly represented new facts or changed circumstances.[10] It is clear from the record that defendant's decision in 2017 to no longer make regular payments to plaintiff, aside from mandatory child support distributions, drove plaintiff's motion to renew spousal support. Had defendant continued the status quo, we are confident that plaintiff would never have filed her motion. This case was not initiated because of a change in living expenses, a change in jobs, or a change in income; plaintiff filed the motion because defendant stopped payments that he had been voluntarily making for years. Under the judgment of divorce, it was anticipated that spousal support would terminate in September 2011. All that occurred here is that defendant effectively continued paying spousal support beyond the end date set forth in the divorce judgment.

If there were any relevant change of circumstances, it was the change from defendant's regularly transferring money to plaintiff's account to then halting those payments. This, however, was not a change of circumstances in comparison to the circumstances that existed at

---

[10] Plaintiff argues that the following changes in circumstances existed: (1) the parties were no longer married; (2) the parties now only had one minor child instead of three; (3) defendant, beginning in March 2017, no longer lived at the marital home; (4) defendant stopped his monthly deposits of $2,200 into plaintiff's bank account; and (5) both parties experienced a change in income.

the time the judgment of divorce was entered. Indeed, the circumstances that existed in 2007 had similarities to the circumstances that existed when defendant left the family home and ceased his financial contributions in 2017. The family court appeared to find a change of circumstances based on the fact that plaintiff had become dependent and relied on defendant's financial contributions only to have defendant then cease his voluntary payments and go his own separate way. But this was also essentially the situation at the time of the divorce proceedings. Nevertheless, there was in fact a change in income, with defendant's earnings doubling in the 10-year post-divorce period, and the events that evolved following the divorce were unique.[11] Consequently, we shall proceed on an assumption that there was no error by the family court in finding that there was a change of circumstances sufficient to justify revisiting the spousal support award.

Having found a change of circumstances, the family court awarded plaintiff $1,350 per month in spousal support. After imputing $45,000 in annual income to plaintiff and stating that the adult children "have the ability and means to work and take care of their expenses on their own," the family court found that defendant had the ability to pay spousal support and that plaintiff had an expectation to continue the standard of living created by defendant's monthly payments to her of $2,200. Taking into consideration these findings along with the income and the needs of the parties, the family court decided to award plaintiff spousal support.

Under the unusual circumstances of this case, we hold that the family court abused its discretion by awarding spousal support to plaintiff nearly seven years after spousal support was to have ended under the terms of the judgment of divorce. Here, it is clear that at the core of the family court's decision to again award spousal support was that defendant's continuing to funnel money to plaintiff beyond that required by the divorce judgment created an expectation in plaintiff to continue a certain standard of living that should be advanced and supported by the court. We, however, deem that perspective as failing to appreciate that that position constitutes court-ordered financial punishment of an ex-spouse who generously and voluntarily provides for the comfort of his or her family and former spouse by giving him or her money in an amount that is greater than legally required. When an ex-spouse creates a new normal by making extra-judicial payments—indeed, gifts—to a former spouse, his or her generosity should not evolve into a legal entitlement to indefinite, ongoing assistance in the future.

The family court plainly intended the spousal support award rendered as part of the divorce proceedings in 2007 to be rehabilitative in nature. Nothing in defendant's conduct in voluntarily making payments to plaintiff for approximately ten years following the divorce jeopardized plaintiff's future opportunities at gainful employment, nor did it create a roadblock

---

[11] We note that MCL 552.28, which authorizes spousal support modifications, contains no mention of the need to show a change of circumstances before a court may revisit an award of spousal support. Compare MCL 722.27(1)(c) (expressly requiring a change of circumstances or proper cause before a court may entertain a possible child custody modification). But as cited earlier, the case law demands a showing of a change of circumstances before an award of spousal support may be altered.

to plaintiff's ability "to work into full employment status," as the family court contemplated in 2007. Stated otherwise, plaintiff's reliance on defendant's payments over the years did not result in plaintiff's being deprived of the chance to accomplish the goals of rehabilitation, which was the whole purpose of awarding her spousal support in the first place. Moreover, in working 30 hours a week as an instructor in high school, college, and post-graduate settings, plaintiff has substantially accomplished the goals. We must conclude that spousal support should not have been awarded in this case given the circumstances. The award was not just and reasonable.

## B. ATTORNEY FEES

Defendant argues that the family court abused its discretion by awarding plaintiff $3,000 in attorney fees because plaintiff failed to prove that she was unable to bear the expense of the litigation.

This Court reviews for an abuse of discretion a family court's award of attorney fees in a domestic relations action. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* Underlying findings of fact, however, are reviewed for clear error. *Id.* at 700. A finding of fact is clearly erroneous when we are left with a definite and firm conviction that a mistake was made. *Id.*

The moving party has the burden of proving the amount of the claimed fees and their reasonableness. *Ewald v Ewald*, 292 Mich App 706, 725; 810 NW2d 396 (2011). An award of attorney fees in a domestic relations matter is authorized by court rule, MCR 3.206(D),[12] and by statute, MCL 552.13. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). It appears that the family court awarded the challenged attorney fees under MCR 3.206(D), which provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

---

[12] The identically drafted and structured provisions found in MCR 3.206(D) were formally found in MCR 3.206(C) before an amendment of the court rule took effect on September 1, 2018. 501 Mich. We shall simply refer to MCR 3.206(D).

MCR 3.206(D)(2) provides two separate avenues for awarding attorney fees. *Richards*, 310 Mich App at 700-701. Attorney fees may be awarded under MCR 3.206(D)(2)(a) when a party needs financial assistance to prosecute or defend the suit. *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008). MCR 3.206(D)(2)(b) solely considers a party's behavior without reference to a party's ability to pay. *Richards*, 310 Mich App at 701. In the instant case, the family court plainly did not rely on MCR 3.206(D)(2)(b), leaving us to focus on MCR 3.206(D)(2)(a). A party may not be required to invade his or her assets, including spousal support, to satisfy attorney fees when the party is relying on the same assets for support. *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (quotation marks and citation omitted).

The family court awarded plaintiff $3,000 in attorney fees because of the large disparity in the parties' incomes, while also noting that defendant was up-to-date on her bills and had about $30,000 in savings which were slowly being dissipated because defendant was no longer giving plaintiff $2,200 per month. A disparity in income in and of itself does not suffice to justify an award of attorney fees under the plain and unambiguous language of MCR 3.206(D)(2)(a).[13] There must be a finding that plaintiff is "unable to bear the expense" of litigating her motion to modify spousal support. MCR 3.206(D)(2)(a). Because that did not occur, we reverse the award of attorney fees and remand to the family court for the proper application of MCR 3.206(D)(2)(a).

We vacate the award of spousal support and reverse and remand for further proceedings with respect to the award of attorney fees. We do not retain jurisdiction. Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[13] For example, if a party owed $1,000 in attorney fees and had an annual income of $200,000, the statute would not authorize an award of fees merely because the opposing spouse had an annual income of $750,000—representing a substantial disparity in income.