*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH ELLEN WOOLEVER,

      Plaintiff/Counterdefendant-Appellant,

v

SHANE MICHAEL WOOLEVER,

      Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
January 28, 2021

No. 351007
Mackinac Circuit Court
Family Division
LC No. 2018-008267-DM

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's judgment of divorce dissolving the parties' marriage and dividing the marital assets. Plaintiff challenges four parts of the trial court's decision: the valuation of defendant's medical practice at $0; the spousal support award; retroactive child support; and the denial of attorney fees. We affirm in part and reverse in part.

## I. BACKGROUND

The parties were married in 2003. Plaintiff worked part-time as a nurse anesthetist, and defendant worked full-time as an orthopedic surgeon who made a significant yearly income. Plaintiff was the primary caregiver for the children, and defendant was the primary "breadwinner." Plaintiff was diagnosed with a pulmonary embolism in February 2018 and later began experiencing seizures. Plaintiff was unable to work as a result of her health conditions. The parties' marriage subsequently broke down, and plaintiff filed a complaint for divorce in September 2018. Defendant filed a countercomplaint for divorce shortly after. On October 2, 2018, plaintiff filed a motion for temporary custody and child support. The referee recommended an award of $4,000 per month based on an equal split in parenting time. Plaintiff objected to this, and the trial court ultimately agreed in April 2019. The trial court gave plaintiff temporary primary physical custody of the children and adjusted child support to $7,656 per month. Plaintiff subsequently sought retroactive payments for the difference between what the referee had recommended, i.e., $4,000, and what she was awarded by the trial court, i.e., $7,656, for the approximately six months between when she filed her motion in October 2018 and when the final decision was handed down in April 2019. Plaintiff also sought attorney fees, contending that the large financial disparity between herself and defendant entitled her to such an award.

The trial court conducted a bench trial, and, relevant to this appeal, determined that defendant's medical practice was not a business and should be valued at $0. For the majority of the marriage, defendant had operated a private practice with his own building and many employees. However, in 2016, he sold his equipment to War Memorial Hospital in Sault Ste. Marie and began working for it under a contractual arrangement. Under this arrangement, he no longer operated his own building, and he retained only one employee, his secretary. Defendant testified that this was prompted by issues with medical billing and inconsistent payments from insurance companies and Medicare. He also testified, along with plaintiff's expert witness, Robert W. Schellenberg, that this was an emerging trend within the medical field. Defendant valued his practice at $0, but Schellenberg valued it at approximately $600,000. The trial court found that defendant was an independent contractor with War Memorial Hospital and no longer operated a private practice. It found the basis of Schellenberg's valuation to be problematic and cast its credibility in doubt. Accordingly, his practice was valued at $0. Additionally, the trial court denied plaintiff's motion for attorney fees, awarded plaintiff $2,500 in spousal support until December 2020, and awarded $10,000 in retroactive child support payments.

## II. ANALYSIS

## A. MEDICAL PRACTICE

We conclude that the trial court did not clearly err in its valuation of defendant's medical practice. The trial court's factual findings on the marital property's division are reviewed for clear error, *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014), as is the trial court's valuation of assets, see *Jansen v Jansen*, 205 Mich App 169, 170-171; 517 NW2d 275 (1994). Clear error occurs "when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). See also *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). Given that the trial court's "dispositional ruling is an exercise of discretion[,] . . . the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Sparks*, 440 Mich at 152.

"[I]t is settled law that trial courts are required by court rule to include a determination of the property rights of the parties in the judgment of divorce." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). The "trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Id*. Many ways exist for the trial court to make such valuations, "but the most important point is that the trial court is obligated to make such a valuation if the value is in dispute." *Id*. This Court has stated that "it was not enough . . . [for the trial court] to simply conclude that because neither party submitted persuasive evidence regarding the value, the parties should be left to settle the value after the judgment and findings were entered." *Id*. at 628. "The general rule applicable to valuation of marital assets is that the party seeking to include the interest in the marital estate bears the burden of proving a reasonably

ascertainable value; if the burden is not met, the interest should not be considered an asset subject to distribution." *Wiand v Wiand*, 178 Mich App 137, 149; 443 NW2d 464 (1989).[1]

Although Schellenberg valued defendant's medical practice at $600,000 on the basis of holder's interest methodology, there was support for the trial court's determination that the basis for this valuation was problematic. Schellenberg did not create a written report because of "lack of information," which he described as a "problem" for this case. In fact, he testified that he was "not provided with information in order to do a proper evaluation." When asked how he was able to give an opinion without enough information, he replied, "I can extrapolate to the best of my ability . . . as to what's going on." Furthermore, he conceded that his valuation of defendant's practice could "change significantly" if he were provided tax returns for 2017 and 2018. Accordingly, there was evidence to support the trial court's doubts about Schellenberg's valuation.

Furthermore, much of Schellenberg's testimony created doubt about whether defendant's practice was even a business for purposes of valuation. Schellenberg testified that defendant had "transitioned his practice from being what I would call a real practice to virtually being an employee of the Sault Hospital so that now and for the last approximately year and a half or so he has had a contract with the hospital, and that has been the sole source of income." He testified that, in his opinion, defendant was "essentially an employee of the hospital." Later, Schellenberg testified that defendant was an independent contractor and not an employee. Defendant's testimony confirmed much of this. Defendant testified that, prior to his current position with War Memorial, he had leased a building for his practice and had an average of nine employees. After the change to War Memorial, defendant did not lease a building, had only one employee, and had no assets because he sold his equipment to War Memorial. He also had no accounts receivable and there was "nothing worth of value other than myself and my work." Defendant also testified that he was easily replaceable, that he had only a three-year contract that would auto-renew unless negotiations were entered into, and that he could not assign or sell his contract. Accordingly, the evidence supported a determination that defendant no longer operated a medical business having a market value and that he instead was an independent contractor.

## B. SPOUSAL SUPPORT

We agree that the trial court abused its discretion in the spousal support award because it clearly erred by finding that plaintiff was able to return to work by December 2020. This Court reviews for an abuse of discretion the trial court's award of spousal support. *Woodington*, 288 Mich App at 355. The trial court abuses its discretion when its "decision falls outside the range of reasonable and principled outcomes." *Id*. This Court reviews for clear error the trial court's findings made in its award of spousal support. *Id*. Clear error occurs when, "after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id*.

"The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable

---

[1] Because this case was decided prior to November 1, 1990, it is not binding on this Court. See MCR 7.215(J)(1).

-3-

under the circumstances of the case." *Id*. at 356. The amount of spousal support is determined by "what is just and reasonable under the circumstances of the case." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). When determining the spousal award amount,

> [a]mong the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356.]

There is no "bright-line" or "rigid" test, formula, or rule for determining spousal support on excess income. *Loutts v Loutts*, 298 Mich App 21, 30; 826 NW2d 152 (2012). On appeal, plaintiff does not challenge any of the factors except the ability of the parties to work, namely herself.

In the present case, plaintiff was not able to work because of her health issues. She was not sure when she would be able to return to work, and there was no "official end date" for her health issues. She had an upcoming evaluation in September 2019, and she would have reevaluations every couple of months. Her treating physician had told her that she could not return to work until at least after her September evaluation. Therefore, the trial court improperly speculated when it awarded spousal support only until December 2020. Its award suggests an implicit finding that plaintiff would be able to return to work during that period of time; however, notably, *no* evidence was provided at trial to give any sort of firm date upon which plaintiff would be able to return to work. In other words, no evidence supported a finding that plaintiff's health would in fact improve by December 2020. The trial court's finding was clear error, and its award was an abuse of discretion. On remand, we instruct the trial court to revise its spousal support award in keeping with this decision. We further conclude that the trial court, after considering the division of property and debt, didn't err when it set spousal support at $2,500 a month.

We also believe that the trial court potentially set an improper time limit on spousal support. In *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015), we reversed the trial court for setting spousal support for six years. We stated that "the plain language of MCL 552.28 does not create a 'bright-line rule' about when spousal support may be modified" and that, "[o]nce a trial court provides for spousal support, it has continuing jurisdiction to modify such an order, even without 'triggering language' in the judgment of divorce." *Richards*, 310 Mich App at 693. We "read the trial court's judgment to mean that spousal support is not modifiable upon a showing of proper cause *after the six-year timeframe. The judgment is simply not clear*."[2] *Id*. (emphasis

---

[2] The *Richards* judgment of divorce had provided:

> IT IS FURTHER ORDERED that Defendant pay spousal support to Plaintiff in the amount of 50% of his income derived from his Social Security Disability payments and the two Northwestern Mutual Disability payments h[e]

added).  Therefore, we held that, "[t]o the extent the trial court intended that spousal support would come to a definitive end after six years and could not be revisited, the judgment violates the plain reading of MCL 552.28 and must be vacated."  *Richards*, 310 Mich App at 693.  In the present case, it is unclear whether the trial court's judgment meant that spousal support was not modifiable after December 2020.  It is simply not clear from the judgment.  Therefore, to the extent that the trial court intended to definitively end spousal support by December 2020, the judgment violates MCL 552.28 and must be vacated.

## C.  ATTORNEY FEES

The trial court did not abuse its discretion in its determination that plaintiff was not entitled to attorney fees because plaintiff failed to satisfy her burden to allege sufficient facts demonstrating that she was unable to bear the expense of the divorce action.  In a divorce action, this Court reviews for an abuse of discretion an award of attorney fees.  *Loutts*, 309 Mich App at 215-216.  The trial court's factual findings are reviewed for clear error, and an issue of law is reviewed de novo.  *Id*. at 216.

Michigan follows the " 'American Rule,' " which provides that "attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract."  *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005).  In a divorce action, attorney fees are permitted by statute and court rule.  *Id*.  "A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding." MCR 3.206(D)(1).  MCR 3.206(D)(2) provides two ways for a party in a divorce action to obtain attorney fees; however, for purposes of this appeal, only the first is relevant:

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay[.]

MCR 3.206(D)(2)(a) has been interpreted "to require an award of attorney fees in a divorce action 'only as necessary to enable a party to prosecute or defend a suit.' "[3]  *Loutts*, 309 Mich App at 216 (quotation marks and citations omitted).  Furthermore, "[w]ith respect to a party's ability to prosecute or defend a divorce action, a party 'may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support.' "  *Id*. (quotation marks and citations omitted).

---

> receives monthly.  The spousal support payments are modifiable on showing of proper cause by either party.  This award is limited in time to six (6) years from the date hereof.  [*Richards*, 310 Mich App at 692 (alteration in original).]

[3] The *Loutts* Court examined MCR 3.206(C)(2)(a); however, this was equivalent to today's MCR 3.206(D)(2)(a).

In the present case, plaintiff failed to satisfy her burden to allege *sufficient* facts demonstrating that she was unable to bear the expense of the divorce action. She failed to provide evidence, either with her motion or at the hearing, of attorney fees, hourly rates, number of hours provided, the experience level of her attorney, etc. Plaintiff's arguments, both below and on appeal, essentially amount to one of financial fairness: plaintiff contends that, because defendant makes significantly more money than her, he should pay the attorney fees. Such an argument, however, is not the law in Michigan. See *Skaates v Kayser*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346487, rel'd 7/16/2020); slip op at 12 (upholding the trial court's denial of attorney fees when the "defendant failed to offer any evidence outlining the details of his attorney fees, such as hourly rate, number of hours worked, and the experience level of his attorney").

## D. RETROACTIVE CHILD SUPPORT

Finally, we agree with plaintiff that the trial court abused its discretion when it deviated from the Michigan Child Support Formula (MCSF) because it did not follow the mandatory requirements for deviating from the formula. "A trial court must presumptively follow the MCSF when determining the child support obligation of parents," and "[t]his Court reviews de novo as a question of law whether the trial court has properly applied the MCSF." *Ewald v Ewald*, 292 Mich App 706, 714; 810 NW2d 396 (2011). Furthermore, "[t]he trial court's factual findings underlying its determination regarding child support are reviewed for clear error," and "[t]he trial court's discretionary rulings permitted by statute and the MCSF are reviewed for an abuse of that discretion." *Id*. at 714-715. The trial court abuses its discretion "when a court selects an outcome that is outside the range of reasonable and principled outcomes" or when the trial court "relies on a legally improper reason for departing from the MCSF in establishing a parent's child support obligation." *Id*. at 715.

The MCSF provides for a "parenting-time offset." See *Eward*, 292 Mich App at 719-720. This offset "is based on the premise that as 'a parent cares for a child overnight, that parent should cover many of the child's unduplicated costs, while the other parent will not have to spend as much money for food, utility, and other costs for the child.' " *Id*. at 719, quoting 2008 MCSF 3.03(A)(1). There is "a mathematical formula for determining the offset utilizing each parent's base child support obligation and average number of overnights." *Id*., citing 2008 MCSF 3.03(A)(2). Additionally,

> "[a]n offset for parental time generally applies to every support determination whether in an initial determination or subsequent modification, whether or not previously given." 2008 MCSF 3.03(B). Moreover, the MCSF requires that the offset be calculated on the basis of *actual* overnights even if that is contrary to an existing order regarding parenting time. [*Ewald*, 292 Mich App at 719-720.]

The MCSF provides that, "[i]f a parent produces credible evidence that the approximate number exercised differs from the number granted by the custody or parenting time order, credit the number according to the evidence without requiring someone to formally petition to modify the custody or parenting time order." *Eward*, 292 Mich App at 720, quoting 2008 MCSF 3.03(C)(4).

However, a trial court has discretion to deviate from the MCSF if certain requirements are met:

(2) Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court *may enter an order that deviates from the formula* if the court determines from the facts of the case that application of the child support formula would be *unjust or inappropriate* and sets forth *in writing* or on the record *all of the following*:

     (a) The child support amount determined by application of the child support formula.

     (b) How the child support order deviates from the child support formula.

     (c) The value of property or other support awarded instead of the payment of child support, if applicable.

     (d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [MCL 552.605(2) (emphasis added).]

These requirements are mandatory. *Eward*, 292 Mich App at 716. If the trial court decides to deviate from the MCSF formula, then it "must first state the level of child support it would have ordered had it followed the formula . . . ." *Id*. (quotation marks and citations omitted; alternation in original). This Court has stated that the trial court is required "to meticulously set forth [the statutory] factors when deviating. Anything less fails to fulfill the statutory procedure." *Id*. (quotation marks and citation omitted; alteration in original).

In the present case, the trial court's decision fails to adequately set forth in writing the requirements of MCL 552.605(2). It did not sufficiently explain the reasons why applying the MCSF was unjust or inappropriate. In other words, the trial court failed to fulfill MCL 552.605(2)(d). The trial court merely stated that it found "merit in both positions" and that defendant had "abided by the orders of the court and the children have not been without necessities or otherwise." There was likewise no explanation for why the trial court awarded $10,000 and why this number was more just and appropriate versus that which plaintiff was entitled to under the formula. In fact, there was no explanation at all for how $10,000 was selected. We agree with plaintiff that this number appears to have been an arbitrary number used as an equitable compromise. However, such a compromise was improper because the mandatory criteria in MCL 552.605(2) were not followed. Accordingly, we reverse the trial court and instruct it to sufficiently state its reasons for departing from the formula.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering