*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILL MARIE PASTORIZA, also known as JILL
MARIE BAKER,

UNPUBLISHED
May 23, 2024

Plaintiff-Appellant,

v

No. 363374
Jackson Circuit Court
LC No. 20-000052-DM

RAJAN ANDRES PASTORIZA,

Defendant-Appellee.

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Plaintiff-appellant-wife, Jill Marie Pastoriza, also known as Jill Marie Baker, appeals as of right portions of the trial court's judgment of divorce. First, plaintiff asserts that the trial court acted outside of its authority by awarding spousal support that was not permanent and in an amount that was not equitable considering the parties' positions. Second, concerning the division of marital property, plaintiff challenges the court's division of the parties' 401(k) accounts and the valuation of their medical practice. Third, plaintiff asserts that the court erred by denying her request for attorney fees. Finally, plaintiff contends that this Court should remand this case to another judge because the presiding judge improperly inserted himself in the litigation and failed to make the required findings, which resulted in the inequitable spousal-support determination and property division. We affirm in part, reverse in part, and remand for proceedings before a different judge.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff married defendant-appellee-husband, Rajan Andres Pastoriza, in June 1998. She filed her complaint for divorce in January 2020. During the 22-year marriage, the parties had four children. The parties met while they were attending the University of Michigan. Plaintiff was finishing a bachelor's degree in literature, while defendant was near completing medical school. The parties married a couple months after plaintiff graduated. After graduation, plaintiff worked as a substitute teacher, and she later worked in the human resources department for a software company for three years while defendant completed his four-year residency. In February 2003,

the parties opened a medical practice specializing in obstetrics and gynecology called Women's First Health Services. Plaintiff worked part-time as the office manager at the medical practice. She was not paid. Plaintiff was the primary caregiver for the parties' children while defendant supported the family financially by working as a physician. The parties separated in October 2019.

Early in the proceedings, the trial court entered an ex parte restraining order, which directed the parties to "continue to pay joint marital bills in accordance with the practice of the parties during the marriage and to maintain the status quo of the marital estate during the pendency of the present divorce proceedings." The parties agreed to the sale of the marital home, and the proceeds were divided equally between them. However, the parties were unable to agree concerning many of the other issues involved in the divorce, including child custody, parenting time, child support, spousal support, the value of the medical practice, and attorney fees. Those issues were the focus of the divorce trial.

After trial, the trial court entered a judgment of divorce, which ordered that defendant would pay plaintiff monthly spousal support in the amount of $1,000 for a term of six years. The court determined that plaintiff used $133,500 of marital funds to purchase her new residence. The court also determined that her use of those funds amounted to a depletion of the marital estate that would be offset by plaintiff's award of the funds in her 401(k), which had a current value of $162,123. Specifically, the court noted that defendant's 401(k) had a comparative current value of $322,500 and said, "Each party is awarded their own 401(k) . . . Part of this offset is for the $133,500.00 . . . Plaintiff received as a down-payment for her house."

As for the medical practice, the trial court observed that there was "great discrepancy" in the parties' valuation of the medical practice, "such that it was unreasonable for the court to attempt an equitable disposition of assets reflecting the value of the business." As a result, the court ordered that the medical practice be offered for sale. Defendant would retain the right of first refusal if he wanted to retain the practice and pay one-half of the highest offered price to plaintiff. The court ordered that the parties retain a receiver to attempt to sell the business. If the practice was sold (with ownership interest of the building), then the court ordered that the proceeds be divided equally by the parties. If the parties could not agree on the price, then the court reserved the right to approve the sale after a hearing on the matter. Finally, the court denied plaintiff's request for attorney fees. This appeal followed.

## II. ANALYSIS

### A. SPOUSAL SUPPORT

First, plaintiff challenges the trial court's spousal-support award. She asserts that the court erred by not awarding permanent support, by including an optional education provision for plaintiff to return to school, and by awarding an inequitable award amount. We agree in part.

"It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will

-2-

be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Id*. We review "for clear error the trial court's factual findings regarding spousal support." *Id*. "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014) (quotation marks and citation omitted). "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Loutts*, 298 Mich App at 26.

MCL 552.13(1) states:

> In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, and to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency. It may award costs against either party and award execution for the same, or it may direct such costs to be paid out of any property sequestered, or in the power of the court, or in the hands of a receiver.

The trial court should consider the following factors while determining whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 629, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted).

### 1. A SUPPORT AWARD MUST BE MODIFIABLE

A trial court is permitted to award spousal support to be paid in periodic payments or in gross. *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). Spousal support in gross is paid in either a lump sum or a definite sum in installments, and it is considered nonmodifiable. *Id*. On the other hand, a periodic spousal-support award is subject to modification under MCL 552.28. *Id*. According to MCL 552.28,

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment

of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

Absent the parties' express intent to make the spousal-support award unmodifiable in the judgment of divorce, a periodic spousal-support award will be modifiable under MCL 552.28. *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003). If the spousal-support award was the result of the trial court's decision rather than the parties' agreement, "the judgment may not be interpreted to preclude [one of the parties] from seeking to continue spousal support, or, in other words, modify the spousal support award, at the end of the . . . rehabilitative period established by the trial court." *Id*. at 433-434. This Court has previously held that barring an agreement between the parties, a trial court court's order for spousal support setting "a definitive end . . . [that] could not be revisited . . . violates the plain reading of MCL 552.28 and must be vacated." *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015).

As an initial matter, we note that plaintiff argues on appeal that the trial court erred by awarding spousal support for a term of six years instead of permanently, when she did not request permanent spousal support during the divorce proceedings. Indeed, during her trial testimony, she stated that she did not want to be supported by defendant forever. In her trial brief, she requested spousal support in the amount of $3,376 a month "for a minimum period of ten years." By the time of the parties' closing arguments, plaintiff requested $2,933 a month in spousal support for a term of 7.9 years. Nevertheless, the term of years for support was never agreed on, and the order of the court represents a time frame and amount both lower than those requested by plaintiff. Further, even if this issue is deemed waived, it is one of law and we have the facts necessary on this record for its resolution. *Miller v Mich Dep't of Corrections*, 343 Mich App 104, 119; 996 NW2d 738 (2022).

In the trial court's findings of fact, it wrote that it awarded "modifiable monthly spousal support of $1,000.00 per month to [plaintiff] for a term of 6 (six) years. The amount is modifiable on a material change of circumstances." Similarly, the judgment of divorce provided that plaintiff was "awarded modifiable spousal support in the monthly amount of One Thousand Dollars ($1,000.00) for a period of six years." This language is similar to the language at issue in this Court's prior decision in *Richards*, wherein this Court considered a divorce judgment that provided:

> IT IS FURTHER ORDERED that Defendant pay spousal support to Plaintiff in the amount of 50% of his income derived from his Social Security Disability payments and the two Northwestern Mutual Disability payments h[e] receives monthly. The spousal support payments are modifiable on showing of proper cause by either party. This award is limited in time to six (6) years from the date hereof. [*Richards*, 310 Mich App at 692.]

In *Richards*, this Court took issue with the order to the extent that the language used made the support award "not modifiable upon a showing of proper cause after the six-year time frame." *Id* at 694.

The language employed in the Judgment of Divorce here states:

> Plaintiff is awarded modifiable spousal support in the monthly amount of One Thousand Dollars ($1,000.00) for a period of six years. The terms of spousal support are addressed in the Uniform Spousal Support Order being entered with the Judgement [sic] of Divorce and incorporated herein. The Defendant shall receive credit for any alimony payment he has made prior to the entry of this Judgment.

The Uniform Spousal Support order sets remarriage, death, or the date January 28, 2028 as the conclusion of the order. Taken together, the Uniform Spousal Support order and the language in the judgment closely resembles the problematic language from *Richards*. The inclusion of a firm stop-date in the Order for Spousal Support and the language in the judgment also make this case different from *Gates*, 256 Mich App 420, where this Court upheld a time-limited spousal support order because the "the precise language of the divorce judgment *does not* specify that spousal support will forever cease at the end of five years" but instead provided that support *shall* cease only in the event of remarriage or death. *Id*. at 433-434 (emphasis added). Therefore, as we did in *Richards*, we vacate the order for spousal support.

Because we vacate the order for spousal support, we need not address plaintiff's arguments with respect to the amount of spousal support awarded. We do so, however, because we are troubled by the considerations and conclusions that informed the trial court's spousal support order.

## 2. SUPPORT AMOUNT AWARDED

We previously enumerated the factors a court should consider when determining an appropriate award of spousal support. Contrary to some of plaintiff's arguments, the trial court thoughtfully considered many of these factors. Specifically, plaintiff asserts that the current support amount does not recognize her contribution for caring for the children and working at the medical practice. However, the trial court did recognize these contributions. The court concluded that the weight of those contributions was affected because plaintiff had a bachelor's degree and marketable skills, and she was already building a career. The trial court's conclusion was supported by the record. Plaintiff testified that she obtained her real estate license and that she was affiliated with a Jackson-area real estate firm. During her rebuttal testimony, plaintiff explained that she had sold one house—although she shared the commission with another person.

Plaintiff further claims that the trial court failed to address the disparity in the parties' potential incomes; however, this claim is also inaccurate. The trial court stated in its findings that defendant made a "generous income" as a doctor while plaintiff chose to start a career in real estate. The court concluded that the ability-to-pay and needs factors both favored plaintiff.

To the extent that plaintiff argues the trial court erred by failing to address the property distribution in its findings concerning spousal support, the court included its ruling concerning the distribution of property in the next section of its factual findings. And, in its analysis of the distribution of property the court considered many factors that ultimately favored plaintiff including the parties' circumstances, needs, earning abilities, and past relations, including defendant's previous conviction of drunk driving and his history of anger issues. As a result, considering the court's findings as a whole, it did address the property distribution and defendant's alleged drinking and anger issues. See *Hanaway v Hanaway*, 208 Mich App 278, 295; 527 NW2d

792 (1995) (explaining that "[p]rinciples similar to those of property distribution apply in determining whether to award alimony").

Plaintiff further asserts that the trial court erred by failing to consider that she was the primary custodian of the children. However, the spousal-support award does not concern support for the children. Plaintiff was also awarded $1,789 a month in child support. The parties' first-born child is an adult, while defendant shared 50/50 custody with plaintiff of the parties' twins. Plaintiff was the primary custodian of the parties' daughter, while defendant had parenting time with the daughter for four days every other week. Defendant maintained the children's health insurance and paid private school tuition for the twins.

Ultimately, the trial court addressed several factors in its spousal-support determination, including the roles of the parties during the marriage, plaintiff's desired postdivorce career, the parties' budgets, and plaintiff's spending during the divorce. Plaintiff submits that spousal support in the amount of $1,000 a month was inequitable considering the circumstances. The trial court stated that, considering the parties' budgets, there was "nowhere near enough to accommodate [plaintiff's] request and leave sufficient income to [defendant]." The court further stated that the $1,000 a month award was consistent with the needs of the parties and defendant's ability to pay.

The evidence showed that the medical practice continuously made less money from 2017 until 2021. Plaintiff herself acknowledged that the practice was barely making any money. Defendant's income decreased from about $429,000 in 2017 to about $206,000 in 2020. The practice owed six months' back rent and the parties had taken loans or cash advances to cover items such as payroll and other expenses for the practice. Defendant also would be required to replace plaintiff's role as office manager at the practice with a paid employee. Moreover, as will be discussed in the following section in this opinion, the future of the practice was in question. Defendant wanted to sell the practice; however, he was unsure whether he would be able to do so and for how much. He did not believe that the practice was worth anything. Indeed, the defense expert explained that because of declining revenue and profits, the practice was unable to support the industry standard for doctor compensation. The spousal-support award was modifiable if circumstances changed. Therefore, if defendant sold the practice and obtained employment elsewhere with a substantially higher salary, plaintiff could move to modify the support. See *Gates*, 256 Mich App at 433.

What concerns us is the trial court's emphasis on a non-enumerated factor: the career the trial court determines a party best-suited to pursue. In the trial court's findings of fact, it wrote the following:

> In recognition of [plaintiff's] support of [defendant] while he completed his medical training and as an inducement for [plaintiff] to pursue a career as a teacher that is likely to be more financially productive and rewarding than real estate, the Court orders that [defendant] pay for any educational expenses [plaintiff] incurs while pursuing her master's degree and teaching certificate . . . . Plaintiff must exercise this educational provision within 5 (five) years of the entry of the Judgment of Divorce. The court is familiar with many teachers who use their education degree and sell real estate on the side to maximize their earning potential. Plaintiff is not required to exercise this educational provision, but the Court finds it equitable

-6-

in exchange for her support of the Defendant while completing medical school. The Court is also considering this provision in determining the amount and duration of Alimony.

Although the trial court characterized this provision as an "inducement" for plaintiff to pursue a career as a teacher (utilizing her bachelor's degree) rather than pursuing a career in real estate that would likely take years to become profitable, the court explained that plaintiff was not required to exercise the option. The court believed that the option was equitable because plaintiff supported defendant while he completed medical school and his residency.

An educational provision on its face is not necessarily problematic. This Court has upheld spousal support provisions that encourage "assimilat[ion] into the work force and economic self-sufficiency." *Richards*, 310 Mich App at 692, citing *Friend v Friend*, 486 Mich 1035, 1035; 783 NW2d 122 (2010). Arguably, the $1,000 monthly support order would do just that. See *Friend*, 486 Mich at 1035 (noting that "gradually decreasing rehabilitative payments . . . allow[s the] appellant to assimilate into the workforce and establish economic self-sufficiency"). But an educational provision tied to a particular career, one that the party in question never demonstrated an interest in pursuing, is problematic.[1]

It was the trial court that volunteered teaching as a career path. On the first day of trial, after learning that plaintiff had a bachelor's degree in literature from the University of Michigan, the court asked what would be required of her if she wanted to teach. Plaintiff replied, "I would have to go back and get a teaching certificate. If I wanted to teach at a university or something like that, I would have to go back and get my Ph.D." The trial judge, who "come[s] from a whole family of teachers," suggested again that plaintiff get her master's degree or teaching certificate. Plaintiff replied, "I feel like I got my real estate license for a reason . . . I feel like that has more future earning potential than if I were going to go back to school to get my teaching degree." Again, plaintiff never demonstrated any interest in becoming a teacher, and had no history of pursuing that line of work.

Yes, a trial court should consider the abilities of parties to work, but the trial court must not serve as career coordinator. Make no mistake, in this panel's view, teaching is one of the most difficult, honorable, and important professions a person can choose. It is simply not in the province of the trial court to say that someone who possesses almost no teaching experience, and has never indicated an interest in pursuing a teaching career, should do so. That falls outside the proscribed considerations in determining spousal support. See *Olson*, 256 Mich App at 631 (providing relevant factors to determine whether to award spousal support). Nevertheless, the court did not make the spousal support contingent on this particular career path, and considered other appropriate factors when arriving at the $1,000 per month amount. However, because the court ultimately issued a time-limited spousal support award that was not agreed to by the parties and that is contrary to statutory law, we must vacate the spousal support award on these grounds.

---

[1] The only testimony from plaintiff regarding teaching was that after she graduated college and before she obtained a job at a software company, she "substitute taught for a little while and then . . . worked for a temp agency . . . ."

B. PROPERTY DISTRIBUTION

Next, plaintiff contends that the trial court's property distribution was erroneous. She specifically challenges (1) the court's ruling that her 401(k) be offset for the $133,500 in marital funds that she used to purchase her new home and (2) the decision to put the medical practice up for sale instead of assigning it a value. We conclude that the court's property distribution was equitable under the circumstances.

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property . . . ." *Hodge*, 303 Mich App at 554. "This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Id*. (quotation marks and citation omitted).

To reach an equitable division of the marital estate in a divorce action, a trial court should consider the following factors:

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

"Because of the wide array of factual circumstances involved in a divorce proceeding, the determination of relevant factors varies depending on the case." *McNamara v Horner*, 249 Mich App 177, 185; 642 NW2d 385 (2002). When "any of these factors are relevant to the value of the property or to the needs of the parties, the trial court must make specific findings of fact regarding those factors." *Id*. at 186. "In so doing, the trial court must not assign disproportionate weight to any one circumstance." *Id*.

In dividing marital assets, the goal is to reach an equitable division in light of all the circumstances. While the division need not be mathematically equal, an equitable distribution of marital assets means that they will be roughly congruent, and any significant departures from congruence must be clearly explained by the trial court . . . . [*Id*. at 188 (citations omitted).]

As for plaintiff's 401(k), the trial court ruled:

Each of the parties purchased separate housing of their own after the separation and the marital home was sold. [Defendant] borrowed approximately $18,000.00 (eighteen thousand) from family to secure a land contract on his new residence. [Plaintiff] used $133,500.00 (one hundred thirty-three thousand and five hundred) of marital funds held in trust by her attorney for the purchase of her new residence.

-8-

The monies that [plaintiff] used from the trust account to purchase her new home were part of the marital estate and her use of them was a depletion of the marital estate that will be accounted for elsewhere in the is judgment.

Each party is awarded their present home and each party has no claim on the other party's home.

\* \* \*

Both parties have their own individual 401(k) account. [Plaintiff's] 401(k) account has a current value of $162,123 (one hundred sixty two thousand one hundred and twenty three) after loan. [Defendant's] 401(k) account has a current value of $322,500 (three hundred twenty two five hundred) after loan. Each party is awarded their own 401(k) account and is responsible for any loans outstanding against their account. Part of this offset is for the $133,500.00 (one hundred thirty three Thousand and five hundred) [plaintiff] received as a down-payment for her house.

In regard to the medical practice, the trial court concluded:

There is great discrepancy in the party's valuation of [defendant's] medical practice, such that it is unreasonable for the Court to attempt an equitable disposition of assets reflecting the value of the business. Therefore, the Court orders that [defendant's] medical practice be offered for sale and [defendant] retains right of first refusal should he desire to retain the business and pay a sum equal to one-half the highest offered price to [plaintiff].

The Court orders that $20,000.00 (twenty thousand) of the money held in trust be retained to pay the Receiver for their efforts in trying to market and sell the business. The Court approves Attorney Clyde Mauldin, unless the parties agree to another.

If the medical practice is sold, and/or the ownership interest of the parties is the building, the proceeds shall be divided equally by the parties. If the parties cannot agree on the price, the Court reserves the right to approve the sale after a hearing on the matter.

First, as for the offset to plaintiff's 401(k) in the amount of the marital funds that she used to make a down payment on her new house, the trial court entered a mutual restraining order prohibiting either party from depleting the marital estate. However, plaintiff used $133,500 of marital funds to make a down payment on a home, and she also purchased a boat and underwent cosmetic surgery. Although it is true that defendant also purchased a new home, he purchased his home on a land contract with money that he borrowed from friends and family. He did not use marital funds to purchase the home. As a result, the trial court did not err by offsetting plaintiff's property award by the $133,500 of marital funds that she spent in violation of the restraining order to purchase a new house. See *McNamara*, 249 Mich App at 185 (enumerating proper

-9-

considerations for property division including conduct of the parties). Moreover, the parties discussed during closing arguments the $133,500 plaintiff spent on her home, and her counsel indicated that defendant was entitled to credit in that amount in the property distribution. See *Clohset v No Name Corp*, 302 Mich App 550, 555; 840 NW2d 375 (2012) (a party cannot claim error on appeal regarding an action his or her own counsel deemed proper in the trial court).

Second, the trial court's statement that there was a great discrepancy in the parties' valuation of the medical practice was entirely accurate. Plaintiff's expert valued the practice at $737,500, while defendant's expert valued the practice at negative $84,000. As a result, it was difficult for the trial court to determine a precise value for the practice. The evidence showed that the revenue of the practice had been declining since 2017, and the situation was complicated by the Henry Ford Health System's takeover of the area's hospital. Defendant testified that two doctors with whom he shared an office suite failed to sell their practices and simply retired.

Considering the circumstances, the trial court's determination—that putting the practice up for sale was the best course of action—was not erroneous. Whether defendant chose to maintain the practice or sell it, plaintiff would receive half of the practice's value in light of her contributions to the practice during the marriage. During closing arguments, plaintiff's counsel seemed to accept the proposition of appointing a receiver to sell the practice, but he requested that a minimum price be set. He ultimately requested $368,750 for plaintiff's half of the medical practice, as well as half of defendant's ownership interest in the building. In any event, the trial court ruled that if the parties were unable to agree to a price for the practice, the court would approve a price after holding a hearing on the matter. To the extent that plaintiff asserts that the court's failure to value the practice made it impossible to determine a proper spousal-support award, such a contention is without merit because the parties are to share the proceeds from the sale equally. In other words, the sale would not materially benefit one party over the other. In addition, as previously discussed, the spousal-support award is modifiable. Plaintiff has the ability to move to modify spousal support if the sale somehow creates a material change in circumstances. Accordingly, the trial court's property distribution—including the offset to plaintiff's 401(k) for her down payment on her house and the requirement that the practice be put up for sale and the proceeds be divided equally between the parties—was not inequitable under the circumstances. See *Hodge*, 303 Mich App at 554.

## C. ATTORNEY FEES

Plaintiff further asserts that the trial court erred by denying her request for attorney fees. We disagree.

We review "a trial court's decision whether to award attorney fees for an abuse of discretion, the trial court's findings of fact for clear error, and any questions of law de novo." *Loutts*, 298 Mich App at 24. "Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, [MCR 3.206(D)(1)]." *Id*. In any event, "attorney fees are not recoverable as of right in divorce actions." *Id*.

-10-

MCR 3.206(D) states:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

"This Court has interpreted this rule to require an award of attorney fees in a divorce action only as necessary to enable a party to prosecute or defend a suit." *Loutts*, 298 Mich App at 24 (quotation marks and citation omitted). The trial court must consider whether attorney fees are necessary for the party to defend his or her suit, including whether the party will have to invade his or her spousal-support assets to pay attorney fees, and whether the other party has the ability to pay or contribute to the fees. *Id*. at 25. "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Ewald v Ewald*, 292 Mich App 706, 725; 810 NW2d 396 (2011) (quotation marks and citation omitted). "This would include proving both financial need and the ability of the other party to pay, as well as the amount of the claimed fees and their reasonableness . . . ." *Id*. (citations omitted).

In this case, plaintiff requested that defendant pay her attorney fees, arguing that she was unable to pay her fees and defendant had the ability to pay. However, as defendant points out, the total of plaintiff's attorney fees is unclear. At a hearing, the trial court raised its concern that plaintiff's counsel's attorney fees were almost $70,000. Plaintiff's counsel stood by his fees. He stated that he had "unfettered authority over [his] bills," and that he did not believe the court should care how much he charged because he *could* write off the $62,000 that plaintiff still owed (although he declined to do so). Otherwise, it does not appear that there was any further discussion or documentation concerning plaintiff's attorney fees. Her counsel requested attorney fees during closing arguments, but he did not reveal the total of the fees at that point. The court made the following determination concerning attorney fees:

> After discussion with the attorneys the Court is satisfied that there is not further concern of reasonableness that the Court needs to address. The Court was satisfied with the matter as addressed by the attorneys in open court. Each side is responsible for their own attorney fees. Both parties shall each pay half of [the mediator's] fee of $3,500.00 (three thousand and five hundred). This shall also be paid out of the proceeds from the Annuity.

Because plaintiff failed to submit documentation establishing the amount of the claimed fees, she has not satisfied her burden to justify her request. Moreover, she has not established that defendant had the ability to pay her fees. Considering the discussion at the hearing, it seems apparent that plaintiff accumulated significant attorney fees—especially considering that she had two attorneys for a portion of the proceedings. Although plaintiff was still in the process of building her real estate career, defendant was obligated to pay significant expenses related to the divorce, including child support, spousal support, debt for the practice, 65% of the parties' credit card debt, and his own attorney fees. Ultimately, plaintiff did not show the amount of her fees, whether those fees were reasonable, or whether defendant had the ability to pay those fees. See *Ewald*, 292 Mich App at 725. Accordingly, the trial court did not abuse its discretion by denying plaintiff's request for attorney fees. See *Loutts*, 298 Mich App at 24.

## D. JUDICIAL BIAS

Finally, plaintiff asserts that this case should be remanded to a different judge because the trial judge was biased. We remand to a different judge.

"In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and the court's application of those facts to the relevant law de novo." *Olson*, 256 Mich App at 637. "Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. In this case, plaintiff sought to disqualify the trial court under MCR 2.003(C)(1)(a) and (b). Those provisions provide that disqualification of a judge is warranted if:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

The trial court's order on spousal support was erroneous but "[j]udicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias *unless* there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (emphasis added; quotation marks and citation omitted). We further acknowledge that "[c]omments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Id*.

As an initial matter, we acknowledge aspects of the record do cause concern about fair judgment. As mentioned above, the trial court took it upon itself to choose a career pathway for a party and shape spousal support around that chosen pathway. The trial court here expressed its concern about the amount of plaintiff's attorney fees, which was about $70,000. The court

-12-

believed that the parties should be aware of their costs, and the court did not want the marital estate to be dissipated by attorney fees. Considering the parties' financial situation and that trial had just started, the court's concerns were not entirely unwarranted. The trial court observed that plaintiff's counsel had previously handled a fellow judge's divorce proceeding free of charge, a sum substantially different than the $70,000 bill plaintiff faced. Indeed, plaintiff sought attorney fees from defendant, asserting that she was unable to pay her own fees.

The trial court, though, did not simply bring the matter to the attention of the parties and caution them with respect to their limited remaining assets. Instead, the court surmised that plaintiff's counsel had likely done similar work for "a whole lot less" but part of the higher fees here "might be because oh, I got a doctor here . . . ." The trial court went on to make qualitative judgments on the representation of the parties, noting that plaintiff's counsel appeared "off [his] game after the first day of trial." The trial court watched defense counsel "figuratively and metaphorically" "take [plaintiff's] expert apart." The trial court concluded that defense counsel had "significantly out-performed [plaintiff's counsel] at a fraction of the cost."

The trial court and plaintiff's counsel went on to have a more heated exchange that included the court stating it had "good reason to yell" and that plaintiff's counsel was "billing at an outrageous [rate]." The trial court went on to suggest that plaintiff consider availing herself of the Attorney Grievance Commission when final bills are submitted. Although plaintiff counsel ultimately went on to apologize to the court for being unprofessional, plaintiff counsel renewed his request for a new judge based on the trial court's bias. That motion was denied and never appealed to the Chief Judge.

Here, we need not find evidence of actual bias but only an appearance of impropriety. ("An appearance of impropriety may arise when the conduct of a judge would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *TT v KL*, 334 Mich App 413, 433; 965 NW2d 101 (2020) (quotation marks and citation omitted). If this panel were to imagine a reasonable person seated in the courtroom observing these proceedings, we think they likely would have reached the same conclusion as plaintiff's counsel: "The court is blatantly biased. You've already told me I'm out-lawyered, you've already told me I'm unethical." That experience would deplete any observer's confidence in the integrity and impartiality of our courts. As a result, we remand the matter of spousal support to a different trier of fact.

## III. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion and in front of a different judge. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young

-13-